## THE STATE v. GEORGE JANSEN.

1. CRIME CHARGED; *Insufficient Defense; When Guilt is Complete.* Where one is charged with crime, the mere fact that one who was present with and apparently assisting him in the commission of the crime was simply a detective, constitutes no defense. While perhaps nothing that is actually done by the detective may be imputable to him, as there is no community of purpose, yet if he with a criminal intent personally does every act which is essential to the crime charged, his guilt is complete.

2. BURGLARIOUS BREAKING; *Instruction Refused, No Error.* The detective having disclosed to the police the place of an intended burglary, the proprietor of the building, a saloon, upon the direction of the police, left the rear door, which was ordinarily fastened with a lock and bar, unlocked and unbarred, but closed, and at two o'clock at night the defendant, with the detective, entered through that door, the defendant lifting the latch and opening the door, and were arrested by the police and the proprietor, who were lying in wait. Upon the trial the court refused to instruct that the lifting of the latch and opening of the door were, under the circumstances, no burglarious breaking, and left to the jury to say whether the proprietor consented to the entry by defendant. *Held*, no error.

3. ERRONEOUS INSTRUCTION, *How Cured.* Where an instruction, purporting to give a definition of the crime charged, omits some essential element, it is erroneous; but where there is no dispute in the testimony but that the act omitted from the definition was actually done by the defendant, and when elsewhere in the instructions a correct definition is given, and also that he personally did the act is assumed in several instructions asked by the defendant, the error is not one affecting his substantial rights.

### *Appeal from Atchison District Court.*

AT the November Term, 1878, of the district court, *George Jansen* was charged with, tried for and convicted of the crime of burglary in the second degree, committed August 2, 1878, in the saloon building of M. Marcus, in the city of Atchison. From such conviction he now appeals to this court. The facts are sufficiently stated in the opinion.

*Smith & Solomon,* for appellant:

The essential elements of burglary are a breaking and an entry with intent to steal or commit a felony. If there be no breaking of a security intended to exclude, there can be no burglary. (*The State v. Newbegin,* 25 Me. 500.) Applying this test to the facts of the case at bar, we claim that the appellant's demurrer to the evidence and his motion to dismiss should have been sustained. Such a motion and the demurrer were proper. (49 N. Y. 137.) An entry is an essential element in the crime of burglary. An information which does not charge an entry is bad. (*State v. Whitby,* 15 Kas. 402; 22 Pick. 4, 5.)

The court told the jury in this case that the evidence introduced by the defendant Jansen tending to show that he never entered the building, amounted to nothing. An erroneous instruction cannot be cured by subsequent instructions which are contradictory, nor by the fact that the jury found their verdict upon a distinct point. (3 Wharton's Cr. Law, § 316; 5 Nev. 132; 1 Denio, 280; 31 Ind. 480; *State v. Horne,* 1 Kas. 73; *State v. Howard,* 14 Kas. 175.)

The whole tenor and effect of the evidence introduced by the state show that Jansen's actions on the night of August

2d, 1878, were the result of a trick and a conspiracy to seduce and entrap him into a questionable situation, and then to load him down with evidences of guilt.

On the question of the demurrer and motion, we cite the following authorities, which are directly in point: *Speiden v. The State*, 3 Tex. App. 157; *Regina v. Johnson and Jones*, 41 Eng. Com. Law Rep. 123; *Allen v. The State*, 40 Ala. 334; Meigs (Tenn.), 84; *People v. Collins*, 18 Albany Law J. 271.

Samuel Wiles was not allowed to testify as to admissions made to him by one of his co-conspirators. This certainly was error. (55 N. Y. 565; *The State v. Winner*, 17 Kas. 298.)

Where a door is not secured in the ordinary way, but is by design or by negligence left in such a manner as to invite the entrance of the accused, an entrance made therein with intent to steal is not burglarious. (25 Me. 502; 8 Pick. 355.) In this latter case, the court says:

"The offense [burglary] consists in violating the common security of a dwelling-house in the night-time, for the purpose of committing a felony. It makes no difference whether the door is barred and bolted, or the windows secured, or not; it is enough that the house is secured in the ordinary way, so that by the carelessness of the owner in leaving the window or door open, the party accused of burglary be not tempted to enter."

In addition to the Texas, Alabama and English cases, we would cite the late case of *The United States v. Whittier*, 7 Cent. Law Jour., p. 51.

*C. F. Cochran*, for The State:

The question to be solved in cases in which a detective assists in detecting crime is the same as when, without the assistance of a detective, an alleged criminal is apprehended; *i. e.*, has a crime been perpetrated? Has the alleged criminal in fact done those acts constituting in law a public offense? If he has, it is idle to complain that a detective is mixed up with the matter, unless it can be shown that by some act of the detective the accused is relieved, not of the guilt of the act if he did the act, but of the commission of the act itself.

A glance at the authorities relied on by appellant's counsel, will assuredly convince the court that they do not declare any principle analogous to that contended for. In the case of *Regina v. Johnson and Jones*, 41 Eng. Com. Law Rep., p. 123, all that the court pretends to decide is, that where a door was opened by an employé of the owner of the house, acting under the orders of policemen in waiting, and thereafter the accused entered through the door so opened, no burglary was committed. Certainly not; because the opening of the door was legally done by an authorized person, without any illegal opening or breaking. The mere fact that the servant of the owner of the house falsely pretended to sympathize with and participate in the criminal intent, and to assist in the perpetration of the projected crime, was not, however, held sufficient to discharge defendants from responsibility for the criminal acts they did in fact consummate. One of them got possession of certain plate, and was arrested instanter and relieved of his booty. The other was arrested before he laid hold of anything. The one was held for larceny in a dwelling house, the other as accessory before the fact. In the case cited, the policemen did direct and dictate the course pursued by the detective. The detective did, by joining the proposed expedition, bring about the alleged criminal act. Nevertheless, as to acts constituting the only crime or apparent crime completed — *i. e.*, larceny — the court disregarded the circumstances securing the apprehension of the offenders, and held that the crime was in law complete, upon proof of the facts constituting fully its ingredients. To analyze this decision in a few words, it decides — 1st, that inasmuch as the door was opened by a person without criminal intent, and not by persons having a criminal intent, it was not burglariously opened; 2d, that the persons who came to the premises with a criminal purpose, and pursuant to and in the execution thereof did those acts in law constituting larceny, were guilty in law of larceny, notwithstanding the fact that a person they believed to be an accomplice

was in fact throughout the enterprise a spy upon their actions, counseling but to deceive them and secure their capture.

The case of *Allen v. The State*, 40 Ala. 344, is precisely similar. The detective unlocked and opened the door with the keys furnished by the owner, who was the detective's employer. Here there was no breaking. In this case, the defendant (Allen) was assiduously persuaded to engage in the enterprise by the detective, who was acting under orders from his employer. The defendant was reluctant to undertake and timid in the execution of the alleged criminal act; so reticent and fearful was he, in fact, that about all he did was to accompany the detective to the building and witness what were unquestionably the *authorized* acts of the detective. The court expressly adopts the rule in the English case above referred to, citing that case and others in its opinion. Here, as in the English case, it is held there is no breaking of the building, actual or constructive, because the opening of the door was at the request, by the procurement, and with the consent of the owner, and by a person acting in his employment. In the case of *Speiden v. The State*, 3 Tex. App. 157, no different rule is announced. In this case the detectives did the breaking by the procurement of the bank officials, who not only consented thereto, but paid the detectives to do their bidding in working up the case — a portion of the programme in doing which was to break open and enter the building. Afterward, the defendant Speiden entered, or rather was taken into the building by the detectives. The court held there was not in law a burglarious breaking of the building, citing the above cases.

There are other similar decisions, but none, I believe, which sanction the views contended for so zealously by appellant's counsel. They seem to labor under the impression that the fact that a detective has aught to do with the operations of an accused, relieves the party from responsibility for the acts by him perpetrated in the execution of a criminal purpose. Such is not the law, and no decision cited so holds. The

·doing of certain acts is essential to the completion of every crime. If certain several facts must appear before the proof ·of the offense is complete, proof of all is essential to legal ·conviction. Proof of a felonious breaking, without an en ·trance of the building, will not constitute burglary; nor will proof of an entrance thereof with a felonious purpose consti ·tute the offense. But if both are unlawful and felonious, breaking and an entrance with purpose to commit a larceny appear, the crime is complete, conviction thereof is legal, and ·the fact that a detective is instrumental in apprehending the ·offender is immaterial.

The only manner in which the presence of a detective can .affect the guilt of the accused is, that if the detective him ·self does any of the several acts constituting the offense, and the accused omits to do those acts, the accused is not guilty in law, because he has not in fact done all the acts essential to the completion of the crime. And it is manifest under such circumstances that the act of the detective, who is the .agent of the owner, cannot be made to supply the missing link in the chain of facts essential to the guilt of the accused; for the owner of a building could not direct it to be broken ·open, and after it was broken open under his direction im pute to another as a crime the very act done by his agent ·under his own direction.

Counsel for appellant cite the case of *The State v. Newbe gin,* 25 Me. 502, which is not only not in point, but con strued according to their views it is in some of its essential features irreconcilable with rules of law settled by the sanc tion of ages, and affirmed by the courts of England and America.

·The opinion of the court was delivered by

BREWER, J.: Defendant was convicted, in the district ·court of Atchison county, of the crime of burglary in the second degree, and from such conviction has brought this ·appeal.

The first question which we shall notice is that sought to

be raised in the district court by a demurrer to the state's evidence. Waiving any inquiry into the propriety of such a practice as that pursued by counsel, let us inquire whether, upon the testimony presented, there was a case which ought to have gone to the jury, and which now will support a verdict of guilty. The facts are these: On the night of the 2d of August, 1878, M. Marcus, the proprietor of a saloon, was hidden with two policemen in a coal shed in the rear of his saloon. The front door of the saloon was locked; the rear door shut, but not bolted. About two o'clock, one Samuel Wiles came through the back yard, opened the rear door, waited a moment, and then closed it and retired. In a few minutes, Wiles and defendant returned (the latter in advance), opened the door, and entered the building. In the building · was a safe, with some money in it. After Wiles and defendant had gone into the building, Marcus and the policemen came out of their place of concealment, and arrested them. On their persons, was found a number of burglar's tools. Defendant stated to Marcus, after being arrested, that he was hard up, pressed for money, and had come to make a raise. If these facts stood alone, there could be no question of the correctness of the court's ruling. Here were all the elements of the crime of burglary, as charged —a breaking and entering in the night-time, with an obvious and expressed intent to steal. The two points around which the objections of counsel gather are, the relations of Wiles to this matter, and the condition and fastenings of the door through which the parties entered. In relation to the former, counsel claim that Wiles was a decoy, leading defendant on to do what he did ; that Wiles disclosed the intended visit to the officers, and thus enabled them to be present and arrest Jansen, as also that when Wiles and defendant were taken to jail that night, the former was not placed in custody, but permitted to go at large, with a firing of pistols under a pretense of an escape; but beyond this, Wiles's relations to the affair are a mere matter of conjecture. As to them the record is silent. How long Wiles and Jansen had

been acting together, who planned this burglary, who was chief and who assistant, what division of the proceeds had been agreed upon, what motive induced Wiles to divulge the place of the intended crime, are all undisclosed by the testimony. A jury might be justified, perhaps, in inferring that he was a detective, but the court could not say absolutely that he was. Nor could anyone say, from the testimony, that he prompted, planned or induced the crime. Even if he were a detective, and acting solely as such from the commencement to the close of his relations with Jansen, that would not necessarily purge the latter of guilt. The act of a detective may, perhaps, not be imputable to the defendant, as there is a want of a community of motive. The one has a criminal intent, while the other is seeking the discovery and punishment of crime. But where each of the overt acts going to make up the crime charged, is personally done by the defendant, and with criminal intent, his guilt is complete, no matter what motives may prompt or what acts be done by the party who is with and apparently assisting him. Counsel have cited and commented upon several cases in which detectives figured, and in which the defendants were adjudged guiltless of the crimes charged. But this feature distinguishes them, that some act essential to the crime charged, was in fact done by the detective, and not by the defendant; and this act not being imputable to the defendant, the latter's guilt was not made out. Intent alone does not make crime. The intent and the act must combine; and all the elements of the act must exist and be imputable to the defendant.

1. Crime charged; insufficient defense; when guilt is complete.

Counsel for the state has very clearly analyzed some of these cases, as follows: In *Regina v. Johnson and Jones*, 41 Eng. Com. Law, 123, all that the court pretends to decide is, that where a door was opened by an employé of the owner of the house, acting under the orders of policemen in waiting, and thereafter the accused entered through the door so opened, no burglary was committed. Certainly not; because the opening of the door was legally done by an authorized person,

without any illegal opening or breaking. The mere fact that the servant of the owner of the house falsely pretended to sympathize with and participate in the criminal intent, and to assist in the perpetration of the projected crime, was not, however, held sufficient to discharge the defendants from responsibility for the criminal acts they did in fact consummate. One of them got possession of certain plate, and was arrested instanter and relieved of his booty. The other was arrested before he laid hold of anything. The one was held for larceny in a dwelling house, the other as accessory before the fact. In the case cited, the policemen did direct and dictate the course pursued by the detective. The detective did, by joining the proposed expedition, bring about the alleged criminal act. Nevertheless, as to acts constituting the only crime or apparent crime completed — i. e., larceny — the court disregarded the circumstances securing the apprehension of of the offenders, and held that the crime was in law complete, upon proof of the facts constituting fully its ingredients. To analyze this decision in a few words, it decides — 1st, that inasmuch as the door was opened by a person without criminal intent, and not by persons having a criminal intent, it was not burglariously opened; 2d, that the persons who came to the premises with a criminal purpose, and pursuant to and in the execution thereof did those acts in law constituting larceny, were guilty in law of larceny, notwithstanding the fact that a person they believed an accomplice was in fact, throughout the enterprise, a spy upon their actions, counseling but to deceive them and secure their capture.

The case cited in 40 Ala., p. 344, (*Allen v. The State,*) is precisely similar. The detective unlocked and opened the door with the keys furnished by the owner, who was the detective's employer. Here there was no breaking. In this case, the defendant (Allen) was assiduously persuaded to engage in the enterprise by the detective, who was acting under orders from his employer. The defendant was reluctant to undertake and timid in the execution of the alleged criminal act; so reticent and fearful was he, in fact, that about all he did was

to accompany the detective to the building and witness what were unquestionably the *authorized* acts of the detective. The court expressly adopts the rule in the English case above referred to, citing that case and others in its opinion. Here, as in the English case, it is held that there is no breaking of the building, actual or constructive, because the opening of the door was at the request, by the procurement, and with the consent of the owner, and by a person acting in his employment.

In the case cited in the 3d Texas Court of Appeals, p. 157, (*Speiden v. The State,*) no different rule is announced. In this case the detectives did the breaking by the procurement of the bank officials, who not only consented thereto, but paid the detectives to do their bidding in working up the case—a portion of the programme in doing which was to break open and enter the building. Afterward, the defendant Speiden entered, or rather was taken into the building by the detectives. The court held that there was not in law a burglarious breaking of the building, citing the above cases.

This analysis fully illustrates the principle we have noticed, and makes it clear that there was no error in the ruling of the district court, so far as this branch of the case is concerned.

In reference to the condition and fastenings of the door which defendant opened in entering the building, it appeared that ordinarily it was fastened on the inside by a bolt and a lock; that in the evening prior to the entry, the policeman told Marcus that he must leave it unfastened, as the parties expected would not break a lock; that in obedience to this direction, Marcus, though with some hesitation, left the door unfastened, but shut and latched. In that condition the defendant found it, and the only breaking consisted in lifting up the latch and opening the door. Was this a breaking within the meaning of the word, as used in the definition of burglary? That the lifting of a latch may, when that is the ordinary mode of fastening, constitute a breaking, will not

be questioned. (1 Bouvier Law Dict., p. 196, title, *Burglary;* 4 Bl. Com. 226, note 15; 2 Wharton Cr. Law, §1532.)

But the contention of counsel is, that while ordinarily so fastened as to exclude and repel entrance, it was at this time in such a condition as to invite entrance; that there was an implied consent to the entry; that it was left unfastened so that the defendant might enter. And the case of *The State v. Newbegin*, 25 Me. 500, is cited, in which there are some expressions in the opinion of the court which may be construed as lending countenance to this claim. It is evident that this was the vital point in the case, for as no larceny was actually committed, if there was no burglarious breaking into the building the defendant was guiltless of crime. We

2. Burglarious breaking; instruction refused, no error.

think the ruling of the district court was right in respect to this matter. It left the question as one of fact to the jury, to say whether there was any consent on the part of Marcus to the defendant's entry, and refused to hold that as matter of law the omission of the ordinary fastenings rendered the opening of the door by the lifting of the latch a non-burglarious breaking. And the finding of the jury that Marcus did not consent to the entry was warranted, if not compelled, by the testimony. His willingness to assist in and facilitate the detection and arrest of a criminal was no consent to the commission of the crime. If he had left the door open, then, as there would have been no breaking, there would have been no burglary; but still would that have been a consent to the entry of the defendant with intent to commit a crime? Can it for a moment be imputed to him that he was consenting to the perpetration of a crime upon himself? Was his motive that of a willingness to assist, or a desire to detect and arrest the criminal? He left his door so that an entry could be accomplished only by a breaking. Was he thereby consenting to the breaking? The time and circumstances explain the motive. The storekeeper who in the morning unlocks and opens his front door thereby invites the public to enter,

and consents to its entry. Is his motive the same when, at 2 o'clock of a hot, sultry night, he throws the back door open for the cooling breeze to enter? The same act at different times and under different circumstances may spring from entirely different motives, and the jury could fairly say that Marcus was in no sense consenting to the breaking into his store, but was only striving to facilitate and secure the arrest of an expected criminal. And as the opening of a door by the lifting of a latch may be a burglarious breaking, it would not do for the court to hold that such an opening was not a breaking, unless the other circumstances proved either a consent to the act or the want of a burglarious intent. It will not do to lay down the universal rule that an omission of the ordinary fastenings divests a breaking of its burglarious character. The motive of the omission and the intent of the breaking are always to be considered. A housekeeper, expecting some member of the family to return late at night, may leave the front door unlocked. One with criminal intent may open the door and enter. Is it any less a burglary because ordinarily at night the door is locked? The breaking must always be with intent to commit a crime, to make it a burglarious breaking, and there must also always be some force, however slight, to remove the obstacle to entrance. We see nothing in the ruling of the court or the decision of the jury in these matters of which appellant has any just cause of complaint.

One other matter alone demands our attention, and that is the first instruction. This, as it stands, is confessedly erroneous. It attempts to define burglary, but omits therefrom the unlawful entry, and makes the mere breaking open of the building with felonious intent the crime; yet, under the circumstances, we think that this error was without prejudice, and no ground for reversal; and for these reasons the correct definition of the crime was elsewhere given in the instructions, and of the fact of the entry there was no dispute. The error was in reference to a matter concerning which there was no contra-

3. Erroneous instruction, how cured.

dictory testimony. It is as though the court had omitted the venue or the time, when both were unquestioned. Indeed, some of the instructions asked by the defendant and given by the court assume the fact of the entry as unquestioned, as, for instance, the 7th: "If there is a reasonable doubt in the minds of the jury as to whether the entering of the building by Jansen was the result of a plan on the part of Marcus and Dunkin to entrap the defendant into the commission of the alleged burglary, then it will be your duty to acquit the defendant." The case does not therefore come within the rule laid down in *The State v. Horne*, 1 Kas. 73, as to the effect of contradictory instructions.

Some other matters are alleged as error by the learned counsel for appellant, but in none do we perceive any ground for disturbing the sentence, or any reason to doubt the guilt of the defendant.

The judgment will be affirmed.

All the Justices concurring.