THE STATE OF NORTH DAKOTA, Respondent, v. FRANK SCHUCK, Appellant.

(201 N. W. 342.)

**Intoxicating liquors — possession of, found on premises, for jury; absence of explanation or contrary evidence, it may be inferred that defendant is in conscious possession of unlawful liquor found on premises.**

1. When unlawful liquor is found on the premises or in the physical posses-

---

Note.—(7) Objection to evidence for first time on appeal, see 2 R. C. L. 77; 1 R. C. L. Supp. 385; 4 R. C. L. Supp; 79; 5 R. C. L. Supp. 68.

sion of a person, and it is claimed that the liquor was where found without the knowledge of such person, a question of fact arises, to be decided by the jury, as to whether the defendant knowingly possessed or had control thereof; in the absence of any explanation or evidence warranting the contrary, it may be inferred as a fact that defendant was in conscious possession of such liquor.

**Intoxicating liquors — instruction that person presumed to know condition of premises as to presence of intoxicating liquor.**

2. Certain instructions examined and, for reasons stated in the opinion, held correct, or free from prejudicial error.

**Intoxicating liquors — state need not prove alcoholic contents or that it is fit for beverage purposes where prohibited liquor is found in possession of accused.**

3. When liquor found in the possession of the defendant is one of those enumerated in the first part of § 1, chapter 268, Session Laws 1923, that is, "alcohol, brandy, whiskey, rum, gin, beer, ale, porter and wine," the liquor is presumed to be intoxicating and the state need not prove the alcoholic content or that it is fit "for use for beverage purposes."

**Intoxicating liquors — if liquor found in possession of defendant be enumerated as those containing one-half of one percent alcohol by volume, state must prove alcoholic contents.**

4. If the liquor found in the possession of the defendant be enumerated in the statute as "any spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume, which are fit for use for beverage purposes," the state must prove an alcoholic content above the statutory maximum of one half of one per cent and also that the liquor is fit for use for beverage purposes.

**Intoxicating liquors — refusal of requested instruction that burden on state to prove liquors intoxicating and fit for beverage purposes held not erroneous.**

5. Refusal to give requested instructions, for reasons stated in the opinion, held correct.

**Intoxicating liquors — exclusion of evidence held not erroneous.**

6. Certain rulings of the trial court examined, and, for reasons stated in the opinion, held correct.

**Criminal law — error cannot be predicated on appeal where no objection is made to testimony.**

7. When no objection is made to questions propounded to witnesses for the defense by the trial court, error can not be asserted on appeal for the first time by reason of such questions. For reasons stated in the opinion, it is held, that there is no merit in the claim that such questions were erroneous or prejudicial.

Opinion filed November 17, 1924. Rehearing denied December 5, 1924.

Criminal Law, 16 C J. § 2100 p. 831 n. 69; 17 C. J. § 3332 p. 62 n. 93. Intoxicating Liquors, 33 C. J. § 468 p. 739 n. 25; § 478 p. 743 n. 88; § 479 p. 744 n. 14; § 545 p. 789 n. 5; § 547 p. 790 n. 35; § 550 p. 794 n. 88.

Appeal from the District Court of Ramsey County, North Dakota, before *Burr,* J.

Affirmed.

*Cuthbert & Adamson,* for appellant.

While a court may draw all the inferences which legally and naturally follow from proven facts it cannot infer facts not proven. Re Taylor (S. D.) 165 N. W. 1079; Erhardt v. Estel, 6 Mo. App. 10.

A presumption which the jury is to make is not a circumstance in proof and is not, therefore, a legitimate foundation for a presumption. Moore v. Renick (Mo.) 68 S. W. 936.

The office of presumptions is not to overthrow admitted facts but rather to supply the absence of facts. There can be no presumption against ascertained and established facts. Conway v. Supreme Council, etc. (Cal.) 70 Pac. 223.

Presumptions serve a most useful and indispensable part in the correct decision of many questions but they are out of place when the facts are known or are admitted. Erhardt v. Dietrich, 24 S. W. 188.

A presumption of law is such as is conclusive or absolute; that is, such as is not permitted to be overcome by proof that the fact is otherwise. Bow v. Allenstown, 34 N. H. 351, 69 Am. Dec. 489.

Presumptions cannot be more certain than the facts from which they are made. Blair v. State, 30 Tex. Crim. Rep. 702.

In criminal cases presumptions should be based upon proved facts. Stevens v. State, 17 Tex. Crim. Rep. 618.

In all criminal cases nothing is presumed against the accused. Madison v. State, 16 Tex. Crim. Rep. 435.

A presumption is compulsory and cannot be disregarded by the jury. An inference is nothing more than a permissible deduction from the evidence. Cogdell v. Wilmington & W. R. Co. 132 N. C. 852.

An opportunity of defense is an essential element in the conception of due process of law. 169 U. S. 366.

. Due process of law is defined as the law of the land designed to protect and preserve the rights of the citizen against arbitrary legislation as well as against arbitrary executive or judicial action. State v. Ashbrooke (Mo.) 55 S. W. 627.

It is not permissible for a jury to base an inference of fact upon another fact which is only established by presumption. Cunard S. S. Co. v. Kelly, 126 Fed. 610; Manning v. Insurance Co. 100 U. S. 693.

Possession is the occupation of anything with the intention of exercising the rights of ownership in respect to it. Bryan v. Spivey (N. C.) 13 S. E. 766.

Custody of property as contradistinguished from legal possession means the charge to keep and care for the owner, subject to his order and direction without any interest or rights therein adverse to him. People v. Burr, 41 How. Pr. 296.

*S. W. Thompson,* State's Attorney, for respondent.

What the law does say is that the fact of possession is evidence of guilt upon which a conviction may properly be returned, unless the other facts or circumstances developed be such that, notwithstanding the recent possession, the jury still entertains a reasonable doubt of the defendant's participation in the crime. State v. Smith, 58 Ind. 340; Ingalls v. State (Wis.) 4 N. W. 785; Commonwealth v. Randall, 119 Mass. 107.

JOHNSON, J. Defendant was informed against and convicted in the District Court of Ramsey County on the charge of having in his possession intoxicating liquors. In due time he made a motion in arrest of judgment, which was denied. He appeals.

On or about the 6th of June, 1923, the sheriff of Ramsey county, his deputy and the deputy sheriff of Benson county, visited the premises of the defendant on Minnewaukan Avenue in Devils Lake. The sheriff had a search warrant and upon search of the premises found two half gallon jars, or sealers, one of which, he testifies, contained moonshine alcohol. The witness said that he had drunk intoxicating liquor and was able to say that the contents of the sealer were intoxicating. It seems that one of the sealers was broken before the sheriff had an opportunity to taste it. The one that broke was full to the top and the other one was practically full. One Cruden, a federal prohibition

STATE v. SCHUCK

agent, testified that he tested a sample of the liquor, according to the approved government method, and found that it contained approximately 36% alcohol.

The defendant was the proprietor of a small store on Minnewauken Avenue. He had been previously convicted in federal court of selling lemon extract to an Indian. He and his family occupied rooms upstairs and the store was maintained in the front portion downstairs. There are two or three back rooms downstairs, one being the kitchen, one a sort of a hall, and the other a storeroom, otherwise referred to as the north room. No room downstairs was used as a bedroom. The deputy sheriff found this sealer in the north room with a funnel standing upside down on top of the sealer. A deputy sheriff testified that he tasted the contents of the sealer that was broken and concluded, from prior experience, that it was intoxicating liquor. He testifies to the same effect with respect to Exhibit 1, which is the sealer that was not broken and that the contents of the two were identical. The sealer in question was found on the right hand side of the door of the north room, standing on the floor. The other sealer was taken from the possession of Mrs. Schuck, who was coming out of the north room when accosted by the deputy sheriff of Benson county, who saw her carrying a paste board box in her hand, and when the contents of the box were examined, it was found that it contained the other sealer. The testimony is explicit, as far as the witnesses for the state are concerned, that both sealers came out of the north room, one having been found near the door by the deputy sheriff of Ramsey county, the other taken from the possession of Mrs. Schuck by the deputy sheriff of Benson county, at the moment when she was coming out of this room. Mrs. Schuck, testifying for the defendant, stated that a short time before the officers searched the premises a stranger came to the back door, asked her to permit a box that he brought with him to remain in the kitchen, stating that another man or himself—the testimony is not clear—would call for the package later. She says that he put the package on the stove and that it remained there in the same condition until the officers found it. She testifies that neither she nor her husband knew anything about the contents of the package; that this happened on the day when the State Firemen's Convention was being held in Devils Lake; that there were many strangers in the city; that it was

quite customary for friends and strangers to leave packages in the kitchen or in the store and call for them later. Both the defendant and his wife disclaim any knowledge whatsoever of the fact that the liquor found by the officers was upon their premises. There is square conflict in the testimony as to where the liquor came from, the officers testifying that it was found in this north room and was not on the stove in the kitchen as claimed by Mrs. Schuck. That the liquor was found on premises in possession and under control of the defendant, is undisputed.

The appellant urges three main propositions; that the state failed entirely to prove, first, possession in the defendant Schuck; second, that the liquor found on the premises was intoxicating liquor fit for human consumption; and third, that the court misdirected the jury, and exhibited "undue activity in the trial of the case."

We shall first discuss the errors that pertain to the claim that the evidence is insufficient to support the verdict and particularly to connect the defendant with the crime charged in the information. We have somewhat briefly summarized the evidence. There is no direct testimony tending to show that the defendant Schuck had any knowledge of the presence of the sealers on his premises or that their contents were intoxicating. His wife's testimony is to the effect that he knew nothing about them and that the sealers were brought upon the premises and left there by a total stranger. The defendant claims that in this state of the evidence the jury were not justified in finding that the liquor was in the possession of the defendant, within the meaning of the law.

Was the liquor in the possession of the defendant? He was the proprietor of this store; he was in the store, according to his testimony and that of his wife, all that day; he knew nothing, he says, about the presence of the liquid on his premises; it was found in one of the back rooms near the kitchen. Otherwise there is no direct evidence of possession in the defendant. Is this evidence sufficient to support a finding by the jury that the liquor was in the possession of the defendants? With this assignment should also be considered the exception to the following instruction:

"In the absence of any proof that the defendant did not know there was intoxicating liquor on his premises, you *may presume* that a man

knows the condition of his own place, his home, his store and the property therein, if the circumstances shown warrant this."

The objection made is that the charge puts upon the defendant the burden of proving that the liquor was upon the premises without his knowledge or consent and shifts the burden of proof from the state to the defendant.

In State v. Arrigoni, 119 Wash. 358, 27 A.L.R. 310, 205 Pac. 7, the defendant was charged with unlawful possession of intoxicating liquor. He was the proprietor of a small store and lived in the back part of the building with his family. The officers who searched the premises found an ordinary pint milk bottle filled to a height of about two inches with liquor that was referred to as "White Mule" in the testimony. The defense was that the defendant did not know of the presence of the liquor on the premises and in this he was corroborated by his wife, who testified that she had obtained the liquor from a neighbor, for use as medicine, without his knowledge. It was contended that the evidence was insufficient to justify the verdict in this, that there was no evidence to show that the defendant had control of the liquor found. In disposing of this contention, the court said:

"The liquor was found in a house in which the appellant had possession and over which he had control, and the presumption naturally and legally arises that he had possession and control of the things contained therein. The presumption is of course rebuttable, and undoubtedly was rebutted if the account given of the presence of the liquor in the house is to be taken as true. But, manifestly, it was for the jury, not the court, to say whether or not the account was true. So, with the quantity. It was not so utterly deficient in that respect as to be negligible, and it was for the jury to say whether it was sufficient to be available for unlawful use."

It may be inferred that a man knows the contents of his own home; and if he knows, he is ordinarily, as a matter of law, deemed to be in possession thereof. In law he can not be in possession of a thing without what, in legal contemplation, though, perhaps, not always in fact, is knowledge. The presumption—inference—of knowledge is one of fact, is slight and is, of course, rebuttable. In the instant case the defendant sought to explain his possession, to rebut it, but the jury did not believe the explanation. The court did no more than to tell the

jury that a man *may* be presumed to be in possession of the contents of a building used as a home and fully under his control; and that this presumption, or inference, was one of fact for the jury and was rebuttable, the court made clear in its charge.

The portion of the instructions quoted supra, and to which the defendant objects, moreover, does not fairly present the theory of the entire charge. The court said:

"No man has a right to permit intoxicating liquors to be in his home or store or on his premises and if he knowingly permits them to be there then they are in his possession so far as the law is concerned. The presence of intoxicating liquors on his premises or in his home or store without his knowledge or connivance would not constitute having possession as to constitute an offense. The state must prove that it was there. So far as knowledge is concerned, however, you are not precluded by the statements of the defendant as to his knowledge if the proof shows otherwise. His knowledge may be proved by other methods."

Then follows the part of the instruction objected to, and the paragraph concludes:

"The fact, if it be a fact, that his wife may have known of the presence of intoxicating liquor on the premises, if such presence has been shown, is no proof the defendant may have known, neither is it proof that the defendant did not have such liquor in his possession. It is the defendant's knowledge and possession that concerns us in this case."

We think it is a fair construction of this charge that the court merely intended to and did in fact tell the jury that they, as the triers of the facts, were permitted to infer from the fact of possession of the house and control thereof by the defendant that he knew what was contained in it, but that this was merely an inference of a fact, which might be and would be rebutted and overthrown by facts and circumstances indicating the contrary. If there was knowledge, under the facts, there was possession and the defendant could properly be found guilty. It must be noted that the court did not say, as did the Washington court, in State v. Bossio, 128 Wash. 156, 222 Pac. 467, that if "intoxicating liquor was found on premises of which the defendant had personal and physical possession, *it would be presumed* that the liquor upon the premises was in his possession." In the case at bar it

was left entirely to the jury whether to draw the inference of knowledge of the presence of the liquor from the fact that it was found on premises under the control of the defendant, for if he knew, he was in possession. The court told the jury that the burden was upon the state to prove possession and to prove that the defendant knew that the liquor was upon his premises, beyond a reasonable doubt. In State v. Brown, 121 Wash. 371, 209 Pac. 855, the court told the jury that a *presumption* from unlawful possession arose that the liquor was kept for unlawful sale. This was manifest error and was so held because it was for the jury to say, under all the circumstances, whether such an inference of fact was proper in view of all the evidence. The trial court, in the instant case, left it to the jury to say whether a presumption or inference of knowledge arose under all the circumstances. In the case of Jackson v. Gordon, 119 Miss. 325, 80 So. 785, the defendant was charged with having liquor unlawfully in his possession. The defense was that the liquor found was put on the premises of defendant without his knowledge or consent by customers of the place and that he did not own it. In that case the court say:

"Of course when unlawful liquor is found on the premises or in the physical possession of a person, and such person claims that the liquor is in his possession without his knowledge, a question of fact arises, to be decided by a jury, as to whether or not he knowingly or consciously possessed control of the liquor, *as it may be reasonably presumed and inferred as a fact that he knows of its presence.*" (Italics are ours.)

In Autrey v. State, 18 Ga. App. 13, 88 S. E. 715, the court say:

" 'Where one is charged with the offense of keeping on hand at his place of business alcoholic, spirituous, malt, or intoxicating liquors, prohibited by law, and intoxicating liquors are shown to have been found there, such evidence is sufficient to support the inference that the forbidden liquors were kept by him; but this inference is not conclusive, for it may be shown, among other things, that they were not the property of the accused,' and were brought to his place of business without his knowledge and were there without his consent."

The court placed the burden to prove knowledge beyond a reasonable doubt on the state. The court did not say that such a *presumption* arises, but that the jury *"may* presume," that is, infer, such knowledge,

if the facts warrant it. We do not think the province of the jury was invaded by this instruction.

Counsel contends that the use of the word "presume" tended to mislead the jury and that it means to "assume a matter beforehand without proof." From the standpoint of strict etymology, it may be conceded that such is one of the meanings of the word. We do not think, however, that this is necessarily its most commonly accepted signification. Taken in connection with the context, we think it fairly appears that the court used and the jury understood the term in the sense of "infer," one of the definitions given in Webster's New International Dictionary.

There is no direct or specific testimony that the liquor found was fit for use for beverage purposes, although the alcoholic content is established. It is, therefore, contended by the defendant that the state has failed to prove that the liquid found upon the premises was intoxicating liquor, within the meaning of § 1, chapter 268, Session Laws 1923, that is to say, there is a total failure of proof that the liquid, though containing more than the minimum alcoholic content allowed by the law, was fit for use for beverage purposes. It seems to be the theory of the defense that liquids, containing more than one-half of one per cent of alcohol, may be lawfully kept if they be unfit for use for beverage purposes. He contends that the state must establish affirmatively in all cases that the liquid is in fact fit for use as a beverage, in addition to possessing more than the necessary alcoholic content.

Witnesses for the state testified that they had tasted the contents found in the two sealers; that they had tasted and drunk intoxicating liquor before; and that the liquid in the sealers was intoxicating liquor. One witness, the sheriff, described the contents as alcohol; another witness as "moonshine alcohol."

Section 1, Chapter 268, Session Laws 1923, reads as follows:

"The following liquors are hereby declared to be intoxicating and their intoxicating quality shall, by the Courts, be presumed, viz.: alcohol, brandy, whiskey, rum, gin, beer, ale, porter and wine and in addition thereto any spirituous, vinous, malt or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of 1 per centum or more

of alcohol by volume which are fit for use for beverage purposes; Provided, that the foregoing definition shall not extend to sweet fruit juices or dealcoholized wine nor to any beverage or liquid produced by the process by which beer, ale, porter or wine is produced if it contains less than one-half of 1 per centum of alcohol by volume and is otherwise denominated than as beer, ale, or porter and is pasteurized and contained and sold in or from hermetically sealed and labeled bottles."

The statute declares certain liquors intoxicating. No proof of the alcoholic content is necessary when it is made to appear that the liquor in question is one of the class enumerated before the words "in addition thereto." Alcohol is included in that list. The sheriff says that the contents of the jar was "home brew," "moonshine," or "moonshine alcohol." The addition of the descriptive words does not operate to remove the liquor from within the class declared by the statute to be intoxicating. It is "alcohol" within the meaning of the statute. State v. Critzer, 122 Wash. 88, 209 Pac. 1081; State v. Edwards, 106 Or. 58, 210 Pac. 1079. See also State v. Tremont, 160 Minn. 314, 200 N. W. 93.

In connection with the assignment that the evidence is insufficient to support the verdict because the evidence does not expressly show that the liquor was fit for use for beverage purposes, the contention that the following instruction was erroneous, should be considered:

"The state must so prove the liquor found was an intoxicating liquor when found, but in this respect I charge you alcohol is an intoxicating liquor and its intoxicating qualities shall be presumed by the courts of this state, and any liquor, by whatever name called, that contains one-half of one per cent or more alcohol by volume is an intoxicating liquor as defined by our law."

The specific exception to this charge, as heretofore generally stated, is that a liquid may contain more than one-half of one per cent of alcohol and nevertheless not be intoxicating liquor within the statute, if the same be unfit for use for beverage purposes.

The statute provides that alcohol, and other enumerated liquors, shall be presumed to be intoxicating; it then provides that "in addition thereto" certain other "liquids and compounds, whether medicated, proprietary, patented, or not, and by whatever name called . . .

*which are fit for use for beverage purposes,"* shall be presumed to be intoxicating. It seems clear that two classes of liquors are dealt with in the portion of the act, material to this discussion. The first class includes alcohol and the liquors commonly known to be used for beverage purposes and these are declared presumptively intoxicating. If the liquor in question be any of the class here enumerated, it is assumed by the statute to be fit for beverage purposes and no further proof of that fact is required. In the second group we find enumerated general classes of liquors and compounds which, although containing more than one-half of one per cent of alcohol, may be presumed to be intoxicating only if and when "fit for use for beverage purposes." If the liquor in question belong to the general enumeration of the second group and be, for example, a proprietary compound, the state would be required to prove not only the alcoholic content in excess of the statutory minimum, but in addition the fitness of the liquor "for use for beverage purposes." In the case at bar the theory on which the case was tried and submitted was, and the uncontradicted testimony showed, that the liquor belonged to the first class and was, therefore, fit for use as a beverage, and, presumptively intoxicating. The instruction is not technically accurate in this, that it is broadly stated, without qualification, that all liquors containing more than one-half of one per cent of alcohol are presumed intoxicating. It would, perhaps, be better to read the statute to the jury and point out, in a proper case, the distinctions made in the act. There is no evidence in the record from which the inference could be drawn that the liquor was not fit for use as a beverage. The evidence fairly supports the contrary inference.

In State v. Miller, 69 Mont. 1, 220 Pac. 97, the Montana court construed a section of their prohibition law in all material respects identical in language with § 1, chapter 268, Session Laws 1923. The defendant in that case was charged with unlawfully possessing intoxicating liquor. The defense, there as here, was that the state had failed to prove that the liquor in question—beer—was fit for beverage purposes. The court say:

"Beer is a word as well understood as the words 'brandy, rum, gin, ale, porter, and wine.' Beer is not merely capable of being used as a beverage, but it is in fact a beverage. . . ."

The court concluded that the state was required to prove that the

liquor was fit for use as a beverage only in those cases where the liquor in question belonged to the enumeration following the words "in addition thereto." See also the analogous case Re Lockman, 18 Idaho, 465, 46 L.R.A.(N.S.) 759, 110 Pac. 253, and State v. Fremont, supra, where it is held that the court will judicially notice that "moonshine" is "an intoxicating beverage."

The following charge was requested, but refused, and the refusal is assigned as error:

"I further charge you that before you can find the defendant guilty you must not only find beyond a reasonable doubt that the defendant knowingly had intoxicating liquor in his possession at the time and place charged in the information but that such intoxicating liquor was then and there fit for use for beverage purposes, and the burden is upon the state to establish to your satisfaction beyond a reasonable doubt both of these propositions (1) that the liquor was then and there an intoxicating liquor and (2) that it was then and there fit for use for beverage purposes."

The giving of the instruction would have been clearly erroneous. It was not necessary for the state to prove that the liquor was in fact intoxicating if it belonged to the enumeration in the statute before the words "in addition thereto;" the liquors there named are presumed to be intoxicating and no proof thereof is required. Likewise, as has been heretofore pointed out, it would have been error to require the state to prove that the liquor was fit for use for beverage purposes, if it belonged to the classification made in the first part of the statute. For example, suppose the liquor found be pure alcohol. As such it would be unfit for use as a beverage. It would scarcely be contended that a person could lawfully possess unlimited quantities of pure alcohol. Had there been any evidence or claim that the liquor was one of the class enumerated after the words "in addition thereto," a different situation might have been presented. The charge requested is wholly without qualifications. No prejudicial error was committed in refusing this requested instruction.

The defendant also alleges that it was error to give the following instruction: "Take the case, do justice between the parties upon the evidence alone and bring in such a verdict as law and the evidence warrant." The specific objection to the sentence quoted is that it

excludes from the consideration of the jury all the argument of defendant's counsel. With this contention we can not agree. Arguments and statements of counsel are not evidence. Whatever counsel may say in argument, the jury must decide on the evidence and the inference that may be legitimately drawn therefrom. The instruction was not objectionable.

When Mrs. Schuck was on the witness stand, counsel for defendant asked her the following question: "Was there any intoxicating liquor of any kind in the house that you knew about?" On objection by the state on the ground of immateriality, the answer was excluded. The state did not claim or suggest that there was any other liquor on the premises. The question was clearly immaterial. She was not a defendant. The exclusion of the answer, which doubtless would have been "no" could not have prejudiced the defendant.

Lastly, it is said that the trial judge was "unduly" active in the trial of the case. This is specification No. 2, and therein it is said that "the court resorted to 'forked' questions, the following being a fair sample: What time of day was it that this man came *down there?* there being no claim on the part of the witness that the man came either *down or up* there." (Italics are defendant's.) The court did ask this witness a few questions, but they are simple and entirely fair. Moreover, defendant did not interpose a single objection. From the sample given, said by the appellant to be a fair one, we do not think it can be said that the conduct of the trial court was prejudicial to the accused.

We have examined all of the ten errors assigned and, finding no one of them sufficiently meritorious to warrant a reversal, the judgment of the trial court must be affirmed. It is so ordered.

NUESSLE, CHRISTIANSON, and BIRDZELL, JJ., concur.

BRONSON, Ch. J., concurs in result.