THE STATE OF NORTH DAKOTA, Respondent, v. BEN GATES, Appellant.

(204 N. W. 350.)

**Intoxicating liquors — state must prove conscious possession beyond reasonable doubt; from finding liquor in room of accused, jury may infer possession.**

1. In a prosecution on the charge of unlawfully possessing intoxicating

---

Note.—(4) Review of discretion as to leading questions, 2 R. C. L. 216; 1 R. C. L. Supp. 452.

(5) Construction of instructions as a whole, see 14 R. C. L. 817; 4 R. C. L. Supp. 298; 4 R. C. L. Supp. 922; 5 R. C. L. Supp. 781.

liquor the State must prove conscious possession beyond a reasonable doubt. From the finding of intoxicating liquor in a room occupied by the defendant, or in a bag owned by him in such room, it is held, for reasons stated, that the jury may infer possession.

**Criminal law — unlawful possession held supported by evidence.**

2. For reasons stated in the opinion, it is held that there was sufficient evidence to support a finding by the jury that intoxicating liquor, found upon certain premises, was under the control and in the possession of the defendant, in violation of § 1, chapter 268, Sess. Laws, 1923.

**Criminal law — specifications of error based on ruling of trial court. held without merit.**

3. Specifications of error based upon the ruling of the trial court in admitting and excluding evidence, for reasons stated, held without merit.

**Criminal law — leading questions largely discretionary, rulings not disturbed except for abuse of discretion.**

4. Whether leading questions should be permitted is very largely discretionary with the trial court, and its rulings in that respect will not be disturbed unless it is apparent that the discretion was abused to the prejudice of the defendant. For reasons stated, held that it was not an abuse of discretion to overrule objections to certain questions although leading in form.

**Criminal law — charge to jury must be considered as a whole, technical error does not constitute grounds for reversal.**

5. The charge to the jury must be considered as a whole. Theoretical or technical error, or error which for other reasons, is not calculated to lead the jury to return an erroneous verdict, does not constitute a ground for reversal. For reasons stated, held that the charge, as a whole, was correct, although an isolated portion thereof is technically erroneous.

**Criminal law — instructing jury without request that accused has right to remain off witness stand without adverse inference, held not error.**

6. It is not error to instruct the jury, without request, in the language of § 10,837, Comp. Laws, 1913, to the affect that the defendant has a right to remain off the witness stand, and that no adverse inference shall be drawn by the jury from his failure to testify. The rule on this point in State v. Wisnewski, 13 N. D. 649, re-examined and adhered to.

Opinion filed May 2, 1925. Rehearing denied May 25, 1925.

Criminal Law, 16 C. J. § 1225 p. 618 n. 34, p. 619 n. 36; § 2448 p. 1021 n. 52; § 2493 p. 1049 n. 82, p. 1050 n. 84: § 2506 p. 1063 n. 85: 17 C. J. § 3584 p. 245 n. 70: § 3688 p. 339 n. 64; § 3751 p. 368 n. 5. Intoxicating Liquors, 33 C. J. § 480

p. 744 n. 22; § 499 p. 756 n. 58; § 505 p. 761 n. 53, p. 762 n. 57, 61. Witnesses, 40 Cyc. p. 2422 n. 95; p. 2427 n. 26, 27, 28; p. 2429 n. 30; p. 2435 n. 70; p. 2501 n. 94.

Appeal from the District Court of Ramsey County, *Bultz, J.*

Defendant appeals from an order denying motion for a new trial. Affirmed.

*Cuthbert & Adamson,* for appellant.

"Leading questions are largely in the discretion of the trial court as the resort to leading questions by the state was unwarranted and prejudicial to the substantial rights of the defendant." See State v. Hazelett, 14 N. D. 490.

"Where the charge in a criminal case contains in one part a correct legal proposition and in another an incorrect and conflicting proposition upon the same subject, the subject referred to being material to conviction, it cannot be said that the error is avoided, for it is impossible to know upon which proposition the jury depended." Clair v. People (Colo.) 10 Pac. 801.

"The plain intent of the statute is that if the defendant in a criminal action does not take the witness stand in his own behalf, that fact shall be ignored wholly by the prosecuting attorney and the court." State v. Pearce (Minn.) 57 N. W. 655.

"Neither the prosecuting attorney nor the judge has the right to allude to the fact that a person has not availed himself of this statute, and it would be the duty of the court promptly to interrupt a prosecuting counsel who should so far forget himself and the duties of his office as to make use of the fact in any way to the prejudice of a person on trial." Ruloff v. People, 45 N. Y. 213.

*H. W. Swenson,* State's Attorney, and *Geo. F. Shafer,* Attorney General, for respondent.

"The subject of cross-examination is largely within the sound judicial discretion of the trial court and its rulings unless it clearly appears that there has been a manifest abuse of such discretion, will not ordinarily be reversed by the appellate court." State v. Tolley, 23 N. D. 284; Schowebel v. Fugina, 14 N. D. 375; Mathews v. Hanson, 129 N. W. 1116.

"It is, of course, elementary that the instructions must be considered

as a whole and when this is done, we find nothing in the instructions given by the court prejudicial to the rights of the defendants." State v. Tolley, 23 N. D. 284.

"The statute does not prohibit the court from mentioning to the jury the fact that the defendant has a right not to become a witness in the case, and it seems that no possible prejudice could follow from that fact when they were instructed that such fact should not be considered by them in their deliberation." State v. Wisnewski, 13 N. D. 649.

JOHNSON, J. On the 10th of June, 1924, federal prohibition agents and representatives of the sheriff's office, searched certain premises in Devils Lake and found intoxicating liquor thereon. As a result of that search the defendant was informed against, prosecuted and convicted of possessing intoxicating liquor in violation of law.

The grounds of error are, in general, that the evidence of possession is insufficient, that is, defendant contends that he did not occupy the room in which the liquor was found; that the court erred in giving and refusing instructions; and that some evidence was erroneously admitted, and some improperly excluded.

Gates, at the time of the search was living in a rooming house operated by his mother-in-law, Mrs. Hunter. The Hunters also operated a restaurant down town. Whether the room in which the liquor was found was that occupied by the defendant constitutes the only seriously contested question of fact presented in the record.

The State relies on the testimony of the officers who made the search. Armed with a search warrant, they proceeded to the rooming house of the Hunters, where they knew Gates was living; one officer entered the house through the back door, while his associates came in by the front entrance. Gates was present when they entered and searched a downstairs bedroom, adjoining the kitchen. In a clothes closet, connected with the room, they found a suit case containing one gallon can full of liquor and two empty gallon cans; in the same room they found two other gallon containers. One container partly filled with liquor, was in the closet. The defendant said to the officers, in substance, according to their testimony, that the room in which the liquor and the containers were found was occupied by him, or was his room; when he discovered a purpose to take the bag, he protested, saying that it was a

good bag, and he would rather not lose it. The officers saw feminine apparel in the closet. One of the officers testified that the defendant stated "that is my bag," or words to that effect. The testimony tends to show that Gates was willing to part with the liquor, provided the officers did not arrest him. The State's witnesses, after testifying that they had tasted and drunk intoxicating liquors, sampled the contents of the containers while on the witness stand, said that the liquid was alcohol, or grain alcohol, and was intoxicating. In view of this testimony, and in the absence of evidence tending to show anything to the contrary, it was not necessary for the State to prove that the liquor was fit for beverage purposes, or contained more than one half of one per cent of alcohol. Sess. Laws 1923, § 1, chap. 268; State v. Schuck, 51 N. D. 875, 201 N. W. 342; Strada v. United States (C. C. A. 9th) 281 Fed. 145.

The defendant did not testify. His mother-in-law, Mrs. Hunter, was the only witness who testified in his behalf. The substance of her testimony is that Gates did not occupy the room in which the liquor was found; that he occupied a room upstairs; that on or before the 6th of June, four days before the raid that yielded the evidence on which defendant was convicted, a stranger, Abe Ballanger, by name, asked for accommodations, and was assigned the room searched by the officers. She testifies that this roomer was seldom in the house during the time intervening the 6th of June and the search; that he was out at night, and that she saw very little of him. She says that she entered the names of roomers in a note book kept for that purpose; it was not produced at the trial. Ballanger paid in advance, and she never saw him after the raid. He seems to have disappeared completely from view, and, according to Mrs. Hunter, left as evidence of his sojourn, the incriminating liquor, the containers, and a brown leather Gladstone bag.

It is of course self-evident that it was a question of fact for the jury whether the room or the bag in which the intoxicating liquor was found, belonged to or was under the control of the defendant; that both the testimony of the State's witnesses and the explanation of Mrs. Hunter could not very well be true. The jury accepted the version of the officers who made the raid. Obviously, the jury could not arrive at a verdict without accepting one version and rejecting the other. There is abundant evidence to support the finding that the bag belonged to

defendant Gates; and that the room in which the bag and the incriminating evidence were found, was occupied by him and his wife. In short, the State's evidence sufficiently shows that the intoxicating liquor was under the control and in the possession of the defendant. Similar or analogous defenses, making a conflict in the evidence, were interposed in some of the cases cited by this court in State v. Schuck, 51 N. D. 875, 201 N. W. 342. Clearly the assignment founded on the insufficiency of the evidence to support a finding that the defendant unlawfully kept intoxicating liquors upon premises in his possession or under his control, is wholly without merit.

In considering the alleged errors we must not overlook § 11,013, Comp. Laws, 1913, which provides that this court must give judgment "without regard to technical errors or defect or exceptions which do not affect the substantial rights of the parties." We must examine the rulings and instructions challenged with the spirit and purpose of this statute in mind.

One of the specifications of error, based upon the ruling of the trial court in admitting or excluding evidence, rests upon the following portion of the record; on re-direct examination the State asked the witness Carter the specific question. "In the conversation at the time, there was some talk about this bag. Did Mr. Gates say to whom this belonged? A. He said it was his. Q. And he wanted it left? A. Yes." Counsel for defendant thereupon re-cross examined this officer as to the conversation with Gates at the time of the search and the officer stated that defendant said, "that is my bag." This specific question had not been asked on the direct examination. Counsel for defendant, on re-cross examination, asked this witness: "And yet you forgot to tell that when the State's Attorney asked you for the conversation?" To this question the State objected on the ground that it was argumentative and assumed facts not in evidence. The court sustained the objection. Again, "Q. Well, you did not tell it anyway, when the State's attorney asked you for the conversation?" To which a like objection was sustained. The State's Attorney had not, on direct examination asked the witness to state all the conversation. He had inquired about *specific* matters to which *specific* answers had been given. Counsel assumed that the witness had been asked to detail the conversation on direct examination. The assumption is entirely unwarranted and

the ruling was correct. The only question and answer on the direct examination, pertaining to the ownership of the grip was as follows: "Q. Did you hear any conversation with the defendant with respect to this grip you speak of? A. Well, I remember Mr. Nelson wanted to take the grip and Mr. Gates did not want him to, he wanted him to leave it." Further than this, witness was not asked to state the conversation in detail. To say that the right of cross examination was limited to the prejudice of the defendant in sustaining these objections, cannot be maintained on authority or principle.

The State's witness, Nelson was asked: "From having tasted the contents of Ex. 2, what do you say with regard to whether or not it is or is not intoxicating?" The defendant objected on the ground that "there is no sufficient identification of Ex. 2." The trial court properly overruled the objection. The State's testimony clearly showed that the exhibit had been found in a room occupied by defendant and was, at the trial and when the contents were sampled, in the same condition as when it was found by the officers.

Defendant objected to the introduction of Exhibits, 1, 2, 3, 4 and 5, the containers found by the officers who made the raid, on the ground that "there is no evidence in any way connecting the defendant with the same." The court admitted the exhibits. In this there was no error. The testimony of the State's witnesses has been summarized. The exhibits, according to the State's evidence, came from a room, occupied by the defendant, and from a Gladstone bag owned or controlled by him.

Defendant requested the court to give an instruction the purport of which was that parol proof of verbal admissions or statements should be received "with great caution as that kind of evidence is subject to much imperfection and mistake," and that the jury should weigh this evidence with other evidence and bear in mind the fallibility of human memory in relating or re-calling alleged statements and declarations of parties. The court did not give the instruction as requested, but we think the substance was fully covered in the charge. The court said, after referring to the fact that certain admissions and statements, alleged to have been made by Gates at the time of the search, were repeated by the State's witnesses at the trial: "On the other hand you will remember that evidence of oral admissions and declarations of

parties should be received by you, remembering this; that the human memory is liable to fail and to err. And you should also consider the discrepancies, if any, that may have occurred in the testimony of these various witnesses as to what was said and done there at the time this alcohol or this liquid in these cans was seized and taken in the presence of Ben Gates. Such evidence is proper evidence for your consideration with all the other evidence in the case, but you should in that connection, consider the frailty of the human memory, and the liability of persons to err in their repetition of statements made at some previous time." The court then told the jury that in considering the testimony of the State's witnesses, they must separate that which was merely the conclusions of such witnesses as to what was said, from that which constituted the alleged statements made by the defendant, because mere conclusions were not evidence of guilt. This assignment of error is clearly without merit. Assuming that the defendant had a right to cautionary instructions on the point, the court fully and fairly instructed the jury as to the liability of witnesses to err when repeating statements or admissions alleged to have been made at some previous time.

Counsel for defendant contends that certain questions were leading and that the court should have sustained his objections on that ground. The only questions of which complaint is made, are: "Q. You are not positive of the exact language, are you?" And again: "Q. At the time of the conversation, did Gates tell you or someone in your presence that this bag belonged to someone else?" It is true that the questions are in form leading; it is also true that in the matter of permitting leading questions, the trial court has some discretion. Counsel cites and relies on State v. Hazlett, 14 N. D. 490, 105 N. W. 617, in support of the assertion that the rulings were erroneous. In the first paragraph of the syllabus it is stated in that case, "Whether leading questions should be permitted or not is very largely discretionary with the trial court, and its rulings in that respect will not be disturbed unless it is apparent that the discretion was abused to the prejudice of the appellant." It was there held that leading questions had been permitted to the prejudice of the defendant because, although the prosecutrix was a willing witness, and over 15 years of age, "almost the entire direct testimony was elicited by extremely leading questions, without any attempt to obtain her answers in some other way." No comment is neces-

sary to show that the two cases upon this point are as far apart as the poles. It is inconceivable that any prejudice could have resulted to the defendant because these relatively unimportant questions were leading in form.

Error is assigned upon the following instructions "If you should find on the evidence in this case that this liquor was in a room occupied by defendant *or in the house occupied by the defendant* that would simply be a circumstance as to be considered by you with all the other evidence in the case as bearing upon the defendant's guilt or innocence," on the ground that liquor might have been found in some part of the house other than the room under the control of the defendant and he would not then be guilty of unlawful possession. With the emphasized portion out, the charge would be clearly correct. Standing alone, the clause italicised is erroneous in view of the evidence. Defendant could not, under the facts here, be held responsible for liquor found somewhere in a public rooming house over which he had no control, and not in a room occupied by him; and the finding of liquor in a part of the rooming house not under his control, would not be even a circumstance to be considered by the jury in determining his guilt or innocence.

The argument is that the jury might have believed the testimony of Mrs. Hunter that the room where the liquor was found was not at any time under the control of Gates; that the bag belonged to Ballanger, who last occupied the room, and did not belong to Gates; but that defendant might nevertheless be found guilty because of the circumstance that liquor was found in the rooming house.

It must not be overlooked that the sentence to which exception is taken is but an isolated portion of a charge which fully covered that phase of the State's burden relative to the control or possession of the liquor by the defendant. The court said to the jury:

"In regard to the possession of this liquor, I say to you that the possession must have been *knowingly,* not just accidentally, because if someone comes and puts alcohol in your house or in *your building and you don't know anything about it, of course you would'nt be guilty of any crime.* On the other hand, so far as possession is concerned, it doesn't mean or need to be actual personal possession and the defendant doesn't have to have it in his hand, or in his pocket, or in his grip. *Possession will be sufficient if he has it in any way where he has dominion*

*over it and control over it,* but as I said to you; of course, *no one could be guilty of having liquor in his possession unless he knew about its being in his possession.* It would not be necessary under our law for the defendant to have carried the liquor to the place where it was found, in order to have it in his possession. All that would be necessary under our law would be that it was in a place *where he had it knowingly and wilfully and purposely and where he had dominion over it.* It doesn't make any difference whether it was in his own house or in his own room or not *provided he knowingly and wilfully and purposely had possession of that intoxicating liquor.* If you should find from all the evidence in this case that this liquor was in a room occupied by the defendant or in a house occupied by the defendant that would simply be a circumstance to be considered by you with all the other evidence in the case as bearing upon the defendant's guilt or innocence. And on the other hand, *it doesn't make any difference if the liquor was found in the defendant's own room or in the defendant's own house if he wasn't responsible for its being there and didn't know about its being there in his possession.* On the other hand, as I said, it wouldn't make any difference if it was in his house or in his room or where it was provided it was in his possession and *he had dominion over it."*

From the emphasized parts of the charge it appears that the trial court seven times told the jury, in different forms of expression, that the defendant could not be found guilty unless it appeared that the liquor was in fact in his "possession," or under his "dominion," or "control," "knowingly," "wilfully and purposely."

It is elementary that the charge must be considered as a whole. "Theoretical or technical error, or error which for other reasons is not calculated to lead the jury to return an erroneous verdict, does not constitute a ground for reversal." Par. 3, syllabus, State v. Carter, 50 N. D. 270, 195 N. W. 567. See also § 11013, supra. Can there be any doubt that the jury clearly understood from the entire charge that the presence of liquor in the rooming house, if not under the conscious control, custody or dominion of the defendant, would not alone justify a verdict of guilty? The court repeated the instruction many times that possession by Gates must have been wilful, or with knowledge. We do not think it possible that the words segregated by defendant and challenged as erroneous, could have affected the verdict or overshadowed,

in the minds of the jurors, the oft repeated injunction that defendant was not to be convicted unless he had conscious possession of, or some responsibility for the presence of the liquor on the premises where it was found. The finding of the liquor, the court said, was merely a *circumstance* to be considered "with all the other evidence;" and unless, in addition to such circumstance, it also appeared that defendant had conscious control or possession of the liquor he must be acquitted. That such is the meaning and effect of the charge as a whole, we think clear beyond the possibility of doubt or misunderstanding.

It is contended that the following instruction was erroneous:

"The next material allegation is the time at which the offense is alleged to have been committed, and the information alleges that this was an offense continuing from the 1st day of January, 1924, to July 30, 1924. I say to you in that respect that the exact date is not essential; it is not necessary for the state to prove the exact time of the commission of a crime, but the proofs must show beyond a reasonable doubt that the crime, if any, was committed within two years prior to the filing of this information in this court and prior to July 30, 1924."

The ground is that the statute under which the defendant was prosecuted and convicted was not in force two years before the information was filed. As an abstract proposition, it may be conceded that the instruction is clearly erroneous, but it does not follow that a reversal is therefore necessary. No testimony whatever was introduced to show possession on any other date than June 10, 1924. There is no suggestion from any source that the defendant unlawfully or otherwise possessed intoxicating liquor in any quantity at any other time than on June 10, when the search was made. It is impossible that any prejudice could have resulted from this instruction and we think a reversal on this ground would be wholly unjustifiable.

But one assignment of error remains to be considered. It is alleged that the court should not have instructed the jury in the language of § 10,837, Comp. Laws, 1913, which reads as follows:

"In the trial of a criminal action or proceeding before any court or magistrate of this state, whether prosecuted by information, indictment, complaint or otherwise, the defendant shall, at his own request and not otherwise, be deemed a competent witness; but his neglect or refusal to testify shall not create or raise any presumption of guilt

against him; nor shall such neglect or refusal be referred to by any attorney prosecuting the case, or considered by the court or jury, before whom the trial takes place."

Counsel contends that the prohibition of this section includes the court as well as the State's Attorney; that to give the instruction served to call attention to the fact that the defendant did not testify; and, therefore, created a prejudice in the minds of the jury due to the failure of Gates to take the witness stand.

Defendant relies on Ruloff v. People, 45 N. Y. 213; State v. Pearce, 56 Minn. 226, 57 N. W. 652, 1065; State v. Williams, 11 S. D. 64, 75 N. W. 815; and State v. Garrington, 11 S. D. 178, 76 N. W. 326, in support of the contention that it was error on the part of the trial court to instruct the jury, on its own motion, that the fact of defendant's failure to testify, did not raise any presumption against him. No reference is made in the brief to State v. Wisnewski, 13 N. D. 649, 102 N. W. 883, 3 Ann. Cas. 907, but on the oral argument the soundness of that decision is challenged. Not one of the authorities cited sustains defendant's contention. Indeed, some of them, like Ruloff v. People, are against him; in South Dakota the rule is the same as in this State. In the Ruloff Case the court in the course of the charge, referred twice to the fact that the defendant had not testified; upon objection thereto, the court promptly corrected the error by saying to the jury that "there was no inference to be drawn against him from the fact of his not being sworn." The Supreme Court held that the error was cured by this instruction. In State v. Pearce, supra, it appears that a statute contained the following provision: "Nor shall the neglect or refusal to testify create any presumption against the defendant; nor shall such neglect be *alluded to* or *commented upon* by the prosecuting attorney *or by the court.*" (Italics are ours.) There was, therefore, in force in Minnesota when that case was decided, a statute containing a prohibition against allusion to or mention of the failure of a defendant to testify, applicable with equal force to both the prosecution and the trial judge. The cases of State v. Williams, and State v. Garrington, supra, from South Dakota are clearly not in point. In State v. Wimpsett, 46 S. D. 6, 189 N. W. 983, the court says: "It is equally the law of this state that it is not reversible error for the court, on its own motion and over the objection of defendant, to call attention to defendant's failure

to testify, by giving a proper instruction on defendant's rights under § 4879, and to say to them that such failure should raise no presumption against him and have no bearing whatever in their minds in arriving at their verdict. State v. Carlisle, 28 S. D. 169, 132 N. W. 686, Ann. Cas. 1914B, 395." It is clear, therefore, that the rule in South Dakota is the same as adopted in State v. Wisnewski, supra. Indeed, in State v. Wimpsett, supra, the court quotes with approval from the North Dakota decision.

In a note to State v. Wisnewski, as reported in 3 Ann. Cas. page 911, it is said: "The rule announced in the reported case that it is not error for the court on its own motion to instruct the jury that they are not to consider adversely the failure of the accused to testify, is supported by the great weight of authority." Numerous cases are cited in support of the rule. In State v. De Witt, 186 Mo. 61, 84 S. W. 956, it appears that the statute provided as does § 10,837, supra, that the failure of defendant to testify shall not "be considered by the court or jury before whom the trial takes place." Speaking of a contention like that of defendant in the case at bar, it is said by the court: "but to say that, when a court directs a jury they shall not consider such a failure to testify in making up their verdict, this amounts to an adverse comment, is illogical and unreasonable, and we must reject such a conclusion." In 16 C. J. 1021, the authorities are collected and overwhelmingly support the conclusion reached in State v. Wisnewski.

The statute prohibits the State's Attorney from commenting upon defendant's failure to testify; he is the prosecutor and, in the minds of the jury, is more likely to be regarded a hostile than a disinterested counselor. Not so with the trial court. He is presumptively impartial; certainly nothing in the record suggests in the instant case that the trial judge was actuated by a feeling of bias or prejudice. The statute was enacted in the interest of the defendant in a criminal action; it was intended by it to insure, so far as possible by legislation, that a jury, charged with the duty of finding a verdict in an action against a person accused of crime, should weigh the evidence entirely free from any unfriendly feeling, conscious or unconscious, due to the election of the accused to stand upon his constitutional right to remain silent. It is difficult to follow the reasoning that a trial judge who specifically calls to the attention of the jury the right of the accused not to testify

and the duty of jurors to make up their verdict wholly without regard to defendant's failure to become a witness, is guilty of prejudicial misconduct, requiring a new trial. To so hold, would be to presume that jurors disregard their oath, wilfully go beyond the law and the constitution, and deliberately ignore the instructions of the court. We can indulge in no such presumption. Under our legal system, jurors and judges have different yet very definite functions to perform; it would be as arrogant as unjust to hold that the jury are less conscientious as triers of the facts than the judge as the expounder of the law. The instruction complained of was clearly in the interest of the defendant, was given by a disinterested trial judge, and was, we must presume, accepted as controlling by the jury. People v. Provost, 144 Mich. 17, 107 N. W. 716, 8 Ann. Cas. 277. We see no reason for overruling State v. Wisnewski. The correctness of the rule of that decision has never been doubted; on the contrary, it has been many times, directly or indirectly, affirmed. It rests upon a statute. Altho many sessions have intervened, the legislature has not seen fit to amend the law in this respect. See State v. Currie, 13 N. D. 655, 69 L.R.A. 405, 112 Am. St. Rep. 687, 102 N. W. 875; State v. Lesh, 27 N. D. 165, 145 N. W. 829; State v. Dodson, 23 N. D. 305, 136 N. W. 789.

The judgment must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and BIRDZELL, JJ., concur.