STATE OF NORTH DAKOTA, Respondent, v. JAMES DANIALS, Appellant.

(206 N. W. 78.)

**Intoxicating liquors — one taking order in state for sale of beverage containing no trace of alcohol when delivered held not guilty of engaging in liquor traffic.**

One who takes an order in this state, to be filled by a concern residing in another state, for the sale and purchase of a beverage which contains no trace of alcohol when delivered, and is not a cider or a fruit juice, or a sweet fruit juice, but is an artificial fruit juice, is not guilty of engaging in the liquor traffic, within the terms of §§ 1, 1B or 2G of chapter 268, Sess. Laws 1923.

Opinion filed November 17, 1925.

Intoxicating Liquors, 33 C. J. § 233 p. 605 n. 57.

Appeal from District Court of Cass County, *Englert, J.*
Reversed and dismissed.

*Lemke & Weaver* and *Thomas Sullivan,* for appellant.

A shipment of merchandise C. O. D. from one state into another constitutes interstate commerce, as the right of parties to make a contract in another state than that of the residence of the purchaser for the sale and purchase of merchandise, and in doing so to fix by agreement the time when, and the conditions on which completed title should pass, is not questioned. American Exp. Co. v. Iowa, 196 U. S. 143.

The state cannot, under cover of exercising its police powers, undertake what amounts essentially to the regulation of interstate commerce or imposing a direct burden upon the commerce. Savage v. Jones, 225 U. S. 501, 56 L. ed. 1182.

Where a merchant in this state orders goods of a merchant in another state, who there accepts the order and delivers the goods ordered to the carrier for transportation to the buyer, at the latter's expense and request, the sale is deemed to have been made in the state of the seller,

Note.—As to whether soliciting orders in prohibition territory to be filled outside, is guilty of sale of intoxicating liquor, see 15 R. C. L. 342 et seq.

in the absence of any evidence showing a contrary intent. P. J. Bowlin Liquor Co. v. Beaudoin, 15 N. D. 557.

An act, the body of which is broader that its title, must be annulled so far as it transcends its title. Divet v. Richland Co. 8 N. D. 65, 76 N. W. 993.

In a prosecution for the maintenance of a liquor nuisance, the state must show either directly or by fair inference, that the liquors contain some alcohol, and therefore were intoxicating when taken from the ac- cused. State v. Knapp, 158 N. W. 517; State v. Schuck, 51 N. D. 875, 201 N. W. 342.

*H. F. Horner,* State's Attorney, and *A. R. Bergesen,* Assistant State's Attorney, for respondent.

Clearly then it must appear that an information is sufficient as to place when the prosecution is against the person if it contains an al- legation that the crime charged to have been committed, was committed within the county. State v. Wheeler, 38 N. D. 456, 165 N. W. 594.

It is to be remembered that we are not here dealing with the common law or with the technical practice of the common law, but with the modern code of criminal procedure. All that our statutes seem to re- quire is that an information be suffiicently clear and definite that it may be understood by an ordinary man. State v. Lesh, 27 N. D. 165, 172 N. W. 829.

Where there is evidence that the beverage in question is wine, it is unnecessary to prove any alcoholic content, provided the statute under which prosecution is brought makes wine an intoxicating liquor. Strada v. United States, 281 Fed. 143.

When a beverage is declared to be intoxicating by statute, its char- acter as an intoxicating liquor is conclusively presumed, regardless of whether it is intoxicating in fact and regardless of alcoholic contents. State v. Frederickson, 101 Me. 37, 63 Atl. 537, 6 L.R.A.(N.S.) 186.

The power of the Federal government granted by the Eighteenth Amendment to enforce the prohibition of the manufacture, sale and transportation of intoxicating liquor carries with it a power to enact any legislative measures reasonably adapted to promote the purpose. Selzman v. United States, 69 L. ed. 700.

The statute declares certain liquors intoxicating. No proof of the alcoholic content is necessary when it is made to appear that the liquor

in question is one of the class coming before the words "in addition thereto" in § 1, chap. 268, Sess. Laws 1923. State v. Schuck, 51 N. D. 875, 201 N. W. 342.

Soliciting orders for the purchase of liquor constituted a part of the transaction in the sale of the same. Starace v. Rossi, 69 Vt. 303, 37 Atl. 1109.

JOHNSON, J. Defendant appeals from an order denying his motion for a new trial or "for judgment notwithstanding the verdict." He was convicted upon an information which charged him with engaging in the liquor traffic. The pertinent statutes read:

"Any person who shall within this State, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor, shall be guilty of the crime of engaging in the liquor traffic." Sess. Laws 1923, § 1B, chap. 268.

"Sweet Fruit Ciders may be manufactured, procured, sold and possessed only when put up in sterile, closed containers and treated by the addition of benzoate of soda, or other substance which will prevent fermentation, in such proportion as to insure the alcoholic content remaining below one-half of one per centum by volume." Sess. Laws 1923, chap. 268, § 2G.

The defendant was found guilty as charged in the information. He contends that the information is duplicitous and that it does not charge a public offense, either under §§ 1 and 1B, or § 2G of chapter 268, supra. He contends, also, that the state failed to prove an offense.

One Lane, a resident of the city of Fargo, on September 28, 1924, ordered from a concern in Ohio, through the defendant as its traveling representative, a five gallon keg of a liquid known as "Ohio Red Port Beverage." Lane delivered the keg to a prohibition officer who procured a chemical analysis of the contents. The analysis disclosed that the liquid was neither a "sweet fruit cider" nor a "sweet fruit juice," and that it contained no trace of alcohol. The chemist testifies that the liquid is a sweet imitation fruit juice. It is not a grape juice; it is an artificial liquid. The chemist says that the liquid is a food product, within the terms of the Food and Drug Act of 1923. There is no evidence suggesting that the liquid contained even a trace of

alcohol, or that it was anything but an artificial concoction, which, however, would ferment under certain conditions.

Defendant contends, further, that the shipment constituted an original package, and, not containing any alcohol, that it was without the exception of § 8738 U. S. Comp. Statutes.

Counsel in his brief and on the oral argument says that the state stands upon the proposition that the defendant is charged with and was guilty of the offense of engaging in the liquor traffic, as defined in § 1B, supra. That is to say, the defendant is, in effect, charged with selling or importing intoxicating liquor, as defined in § 1 of chapter 268, Sess. Laws 1923. He did not keep or possess it. It is made a crime to import the proscribed article. Prima facie, it would seem that all persons knowingly concerned in importing it are, on familiar principles, guilty. The defendant took the order, and, if the commodity be within the prohibited class, he is guilty according to the clear import of the statute.

Section 1, chapter 268, Sess. Laws 1923, reads:

"The following liquors are hereby declared to be intoxicating and their intoxicating quality shall, by the Courts, be presumed, viz.: alcohol, brandy, whisky, rum, gin, beer, ale, porter and wine and in addition thereto any spirituous, vinous, malt or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes; Provided, that the foregoing definition shall not extend to sweet fruit juices or dealcoholized wine nor to any beverage or liquid produced by the process by which beer, ale, porter or wine is produced if it contains less than one-half of 1 per centum of alcohol by volume and is otherwise denominated than as beer, ale, or porter and is pasteurized and contained and sold in or from hermetically sealed and labeled bottles." This section is nearly identical with section one of the Federal Act, U. S. Comp. Stat. § 10,138½, Fed. Stat. Anno. Supp. 1919, p. 204, and is borrowed from it. It will be observed that in the definition certain liquors are presumptively intoxicating. Among this class are, alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine; if the evidence be that the liquor sold or possessed by the accused was of this class, the state need not prove the alcoholic content,

or that the liquid was fit for use for beverage purposes. State v. Schuck, 51 N. D. 875, 201 N. W. 342. Other liquids are declared to be intoxicating, such as spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, by whatever name called, which contain $\frac{1}{2}$ of 1 per centum or more of alcohol by volume and are fit for use for beverage purposes.

Under the Federal Act (U. S. Comp. Stat. § 10,138½i, Fed. Stat. Anno. Supp. 1919, p. 211), § 18, it is unlawful to sell any substance "designed or intended for use in the unlawful manufacture of intoxicating liquor." There is an equivalent of this section in the state law. See §§ 3 and 4, chapter 97, Sess. Laws 1921. The ingenuity of man in devising means to satisfy his wants has long been the theme of commentators. Our lawmakers have not enacted legislation specifically intended to regulate, restrict or prohibit the keeping or selling of the numerous commodities, which, though devoid of even a trace of mature alcohol, have the alcoholic principle in a pre-nascent state, unless designed or intended for use in the unlawful manufacture of intoxicating liquor. This prosecution is not under such statutes or on such theory. It is a fact that the elements which constitute the alcoholic principle are latent in an innumerable variety of useful commodities, such as potatoes, corn, etc., and, under proper conditions are loosed from other compounds only to reform their forces and become alcohol. In some cases, very little active assistance, seems necessary to encourage the processes of alcoholization; in others all that is needed is to open the container, and nature will transmute the article into "very fine wine," with a liberal alcoholic content.

The specific question seems to be whether it is a violation of §§ 1 and 1B, chapter 268, Sess. Laws 1923, and constitutes the offense of engaging in the liquor traffic, to take orders within the state for the purchase of a liquid, to be imported from another state, which has no trace of alcohol in it when delivered, and is neither a cider nor a natural fruit juice, but an imitation fruit juice of some sort which, when permitted to ferment, is transmuted into a liquor having an alcoholic content much above the minimum permitted by the prohibition statute.

The witness Lane testified that defendant represented to him that the beverage was treated before shipment by implantation of a culture,

imported from abroad, which would remain dormant until the bung was removed from the keg, whereupon this culture would promptly begin its appointed mission and convert the liquid into a wine guaranteed to please the palate of the most epicurean connoisseur. While this testimony was denied by the defendant, we are satisfied that a judgment, if material, that the representation was in fact made, has substantial support in the evidence. Counsel for the state takes the position that the term "wine" as used in § 1 of the Prohibition Act (Sess. Laws 1923, chap. 268), includes sweet fruit juices and all liquids which are in process of being converted into "wine." It would seem that unless this contention can be sustained, there must be a dismissal.

It is not open to question that if the contention of the state be sound, every housewife in the state who extracts juices from berries, etc., and stores it until she is ready to make it into jelly, is guilty of manufacturing and possessing intoxicating liquor and subject to the penalties of the prohibition law. Indeed, the far-reaching effect of such a holding cannot be anticipated or described. The federal government has carefully guarded against a result so ridiculous by specific provisions, both in the law and in the regulations of the Treasury Department made pursuant thereto, and, at the same time, in § 18 of the Federal Prohibition Act, has prohibited the advertising, manufacturing, selling or possessing for sale of "any utensil, contrivance, machine, preparation, compound, tablet, substance, formula direction, or recipe, advertised, designed or intended for use in the unlawful manufacture of intoxicating liquor." Sections 3 and 4, chapter 97, Sess. Laws 1921, are substantially counterparts of § 18, supra. We cannot hold that "wine," declared in the state law to be presumptively intoxicating, includes sweet fruit juices or compounds without a trace of alcohol. Such a holding would not be a liberal construction of the law; rather would it be a most unwarranted misconstruction of the English language, and a clear perversion of the purpose the legislature of 1923 had in view.

We are unable to find anything in the record indicating that the defendant engaged in the liquor traffic, as defined in our state. law. He sold a beverage which was not cider, had no trace of alcohol, and was not, when delivered, in fact or by legal definition, intoxicating

liquor. Whether he committed some other offense, in violation of some other law, we manifestly, cannot properly undertake to decide. He was informed against, tried and convicted on the specific charge of engaging in the liquor traffic. He has not been informed against or tried on the charge of selling a preparation "designed or intended" for use in the unlawful manufacture of intoxicating liquor. The legislature has not seen fit, except as heretofore pointed out, to attempt, like the Federal Government, to regulate or restrict the use or keeping of ordinary fruit juices, out of which intoxicants, proscribed by the law, may be made by giving some assistance or direction to the ordinary and normal processes of nature, except cider, which is not classified as a fruit juice, but is the expressed juice of apples. We have no power to do so. It is our duty, under our oaths and the constitution, to apply and interpret the law as made by the legislature; not to fill substantial gaps therein to the end that the conviction of some person may be sustained, because an ex post facto wisdom suggests that something has been omitted by the law-making body which should have been covered.

The judgment is reversed and the action is dismissed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURKE, JJ., concur.