### OF

## THE STATE OF IOWA

### AT

## DES MOINES, OCTOBER TERM, A. D. 1899.

### AND IN THE FIFTY-THIRD YEAR OF THE STATE.

---

STATE OF IOWA V. HENRY ABLEY, Appellant.

**Crimes: OFFICER AIDING CRIMINAL.** It is no defense for breaking and entering a store that a town marshal, for detective purposes, encouraged, counseled, and aided in such act.

**ASSENT BY PERSON ROBBED.** It is no defense for breaking and entering a store that the owner was informed a day before the crime was going to be committed, and was requested to watch and aid in catching the offender, which he did, if he did not assent to the crime, though he did not object to it.

**OF CLERK.** A clerk in a store, without the owner's knowledge or acquiescence, furnished a key to an officer acting for detective purposes, in order that a duplicate could be made of it by defendant, who intended feloniously to break and enter the store; the clerk's object being defendant's arrest on committing the crime. Defendant, accompanied by the officer, broke and entered at midnight. The clerk did not have the custody of, nor the right to, admit anyone into the store at the time defendant entered and the owners did not know of the acts of the clerk. *Held*, that the clerk's acts were no defense.

(61)

CROSS-EXAMINATION OF AIDER: *Discretion.* Where a town marshal gives aid and counsel in the commission of a crime in order to arrest the defendant therefor he may be asked on his cross-examination if he had owed the defendant, whether the indebtedness still remains unpaid, and if the defendant had not been trying to collect it; but excluding such testimony is not error in view of the fact that the admitted acts of the officer revealed his character.

IMPEACHMENT. A witness for the prosecution in a criminal case can not be asked if at some previous time he had not committed a crime.

*Appeal from Franklin District Court.*—HON. S. M. WEAVER, Judge.

TUESDAY, OCTOBER 3, 1899.

INDICTMENT for breaking and entering a store building. From a judgment of conviction the defendant appeals.— *Modified.*

*Taylor & Evans* and *E. P. Andrews* for appellant.

*H. C. Liggett, J. H. Scales, Milton Remley,* Attorney General, and *Charles A. Van Vleck* for the State.

WATERMAN, J.—The building entered was owned by the firm of Schaeffer & Reynolds. No question is made but that defendant broke and entered the store, and took goods therefrom; but it is claimed that he cannot properly be convicted of the offense charged, because the entry was made with the assent of the owners or their agent. The facts upon which this claim is based are as follows: One Clock was marshal of the town in which the building was located. Prior to the commission of the crime, Clock (as he claims, for detective purposes) had been counseling and advising with defendant, not only in relation to this particular offense, but also as to the two breaking and entering other buildings. So zealous was the officer in this questionable line of duty and so anxious was he to impress

defendant with the belief that he was earnest in his criminal intentions and would keep faith in the matters plotted, that Clock alone on one occasion broke and entered another store building, belonging to one Bryan, with a key furnished by defendant, and took from it some goods. Of course, he claims that this was done merely to lead defendant on. Clock testifies that the mayor of the town had previous information from him of defendant's intention to enter the Bryan store. The mayor, who was a witness, does not testify on this point; but, however that fact may be, Clock admits that Bryan, the owner, had no such information, and that the entry was effected without his knowledge or consent. One Will Reynolds, a clerk in the employ of Schaeffer & Reynolds, had a key to the building in question in this case. Shortly before the commission of the offense charged, Clock borrowed this key to get an impression from which defendant could make another key which would open the door, and such a key was afterwards made by defendant. At this time Clock told Reynolds, the clerk, the use which he wished to make of the borrowed key, and also of defendant's criminal purpose. The breaking and entering were done in the nighttime. During the day Clock had warned several citizens of the contemplated crime,—among others, Schaeffer, a member of the firm which owned the store. He told Schaeffer that defendant had a key to the store, and would enter it that night. He did not, however, tell him where or how the key had been obtained. The persons so warned were requested to be on guard and assist in defendant's arrest after the offense was completed. This plan was carried out. Schaeffer and the others watched. Clock and defendant came upon the scene about midnight. Defendant opened the door and entered the store, Clock following. As they came out with the property taken, defendant was arrested.

One who has committed a criminal act is not entitled to be shielded from its consequences merely because he was

induced to do so by another. If there is anything in the defense here, it must be because the entry was assented to by Schaeffer. But the evidence tends strongly to show that Schaeffer, though not objecting, did not personally assent. One who knows of a crime contemplated against him may remain silent and permit matters to go on, for the purpose of apprehending the criminal, without being held to have assented to the act. *People v. Liphardt,* 105 Mich. 80 (62 N. W. Rep. 1022); *State v. Adams,* 115 N. C. 775 (20 S. E. Rep. 722); *State v. Sneff,* 22 Neb. 481 (35 N. W. Rep. 220); *Thompson v. State,* 18 Ind. 386; *State v. Jansen,* 22 Kan. 498. The question of the owner's personal assent was left to the jury, and, we think, under instructions that fully and accurately stated the law. But certain instructions were asked by defendant and refused by the court, the thought of which was to predicate the assent of the owner upon the acts of the clerk, Reynolds. The evidence does not show on the part of the members of the firm any knowledge of Reynolds' conduct. Of course, if the clerk, with criminal intent, aided in any way in the entry of this building, he would be a party to the crime. But that is not what is claimed by defendant. He contends that if the clerk, though without criminal intent, assented to the entry, such assent will be imputed to the master. Some text writers lay down the rule in terms broad enough to give support to this contention, and the following cases are cited by counsel as sustaining it: *Reg. v. Johnson,* 41 E. C. L. 123; *People v. Collins,* 53 Cal. 185; *Saunders v. People,* 38 Mich. 218; *People v. McCord,* 76 Mich. 200 (42 N. W. Rep. 1106); *Allen v. State,* 40 Ala. 344. In the California case, the agent of the owner, who was pretending to take part in the burglary, alone entered the building, and the decision was founded on this fact. The other cases are each based upon one of two states of fact: Either the servant had custody of the building and a right to open it at the time he did, or at the time he assented thereto, or the owner was

aware of the part the servant was taking, and acquiesced therein. Neither of these conditions prevailed in the case at bar. It does not appear that Reynolds had charge of the building, or had any right to admit persons therein, after it was closed for the night; and, as we have said, his conduct in the transaction with Clock was unknown to the owners. We do not think the clerk's conduct can be used as a shield for defendant. 1 Bishop Criminal Law (5th ed.), section 262; *State v. Jansen,* 22 Kan. 498. The instructions were rightly refused.

Clock, when on the witness stand, stated on cross-examination that he had owed defendant money. He was then asked whether defendant had been trying to collect it, and also whether the indebtedness still remained. The court sustained objections to these questions. Questions were also ruled out which called for statements made by the witness to defendant as to his (witness') former life, and further sought to elicit an admission from witness that he had at some previous time committed a crime. This last matter was clearly inadmissible. As to the other testimony sought, the court might properly, in the exercise of its discretion, have received it. Clock's conduct in this whole transaction was so reprehensible and suspicious in character that a wide latitude of cross-examination might have been allowed. But we are not able to say the trial court's discretion was abused. The defendant could not have been prejudiced. The evidence sought was of a collateral nature. So much of it as had a bearing on Clock's motive or feeling towards defendant was made immaterial by the latter's admitted conduct in the transaction of which complaint is made.

We cannot leave this case without again, and in more emphatic terms, expressing our disapproval of the conduct of Clock, who, if he did not suggest, at least encouraged, the commission of the offense by defendant, We are inclined to

doubt whether defendant, if left to himself, would have perpetrated the crime of which he has been convicted.  Clock stimulated him with advice, aided him by acts, and, through unremitting effort, spurred him on to his undoing.  This conduct was outrageous, if, indeed, it was not criminal, and it is aggravated, rather than excused, by the fact that Clock was a peace officer.  Frail human nature is prone enough to crime; it should not be purposely tempted; and in this case, it was urged to act.  Defendant was sentenced to imprisonment in the penitentiary for a term of three years.  In view of the facts, we shall reduce the term to six months.  With this modification, the judgment will be AFFIRMED.