(102 N. W. 883.)

STATE OF NORTH DAKOTA v. CHARLES CURRIE.

Opinion filed March 6, 1905.

**Presence and Co-operation of a Detective in Burglary No Defense to Criminal.**

1. Upon the trial of one charged with burglary, the mere fact that one who was present with and assisted him in the burglary was a detective is not a defense, if the detective did not instigate the crime, and it was committed as to every ingredient of it by the criminal.

**Passive Consent to a Burglary by Owner of Building for the Purpose of Detection Is no Defense to Burglar.**

2. Where a detective disclosed to the owner of the building that it was probably about to be burglarized by a person named, with the feigned assistance of himself, acting for the purpose of securing evidence of the intended burglary and other crimes, the fact that the owner did not take steps to prevent the burglary, but passively allowed it to go on, is not a consent to the burglary that will be a defense to the burglar.

**Where the Accused Commits the Offense in All Its Elements, He Is Guilty Notwithstanding Complicity of Detective.**

3. Where a detective apparently assists in a burglary for the purpose of securing evidence of the same and other offenses, the acts of the detective are not to be imputed to the criminal, as they are not acting in a common purpose. Nevertheless, if the offense is committed by the person charged as to every element thereof, he may be found guilty, notwithstanding the complicity of the detective.

**Instructions — Failure of Prisoner to Testify.**

4. An instruction by the court that the jury must not consider the failure of the defendant to become a witness in his own behalf in arriving at a verdict is not erroneous.

Appeal from District Court, Walsh county; *Kneeshaw*, J.

Charles Currie was convicted of burglary, and appeals.

Affirmed.

*DePuy & DePuy,* for appellant.

A confession must not be obtained from the accused by any direct or implied promise on the part of officials concerned in his prosecution. 3 Am. & Eng. Enc. of Law, 499, 464; 14 Cent. Dig. section 1175.

A subsequent confession following a previous one, made under the influence of promises of favor, is inadmissible, if such previous promises continue their influence on defendant's mind at the time of the examination. In re Bowerhan, 4 City H. R. 136; 14 Cent. Dig. c. 1857; Robinson v. People, 42 N. E. 375. Such second confession must be excluded if there is any doubt of the expurgation of such influence. Walker v. State, 7 Tex, App. 245, 32 Am. Rep. 595; Gallagher v. State, 24 S. W. 288; Clayton v. State, 21 S. W. 255.

If an alleged burglary be instigated by a private detective with the approval of the proprietor of the place alleged to be burglarized, then the defendant is not criminally liable. People v. McCord, 42 N W. 1106; Love v. People, 43 N. E. 710; 8 Cent. Dig. c. 1567.

If the detective pretending to the defendant to be his accomplice, made the actual breaking with the proprietor's consent, no crime was committed, even though the defendant assisted and may have thought that he himself prompted them. Williams v. State, 55 Ga. 394; 32 Cent. Dig. 1495; 1 Bishop on Crim. Law (2d Ed.) sections 344, 345; State v. Douglass, 26 Pac. 476. If the detective led and the defendant followed, and the former had the consent of the owner, the defendant was not guilty, and his intent and belief are immaterial. Speilden v. State, 30 Am. Rep. 126; Williams v. State, 55 Ga. 391; State v. Adams, 20 S. E. 722.

The law looks with suspicion upon the testimony of a detective employing falsehood and encouraging the commission of a crime to gain his ends, and the jury should be specially instructed that his testimony should be received with caution. 29 Am. & Eng. Enc. of Law, 776-7-8.

An instruction unrequested by the defendant, that "under the law, the mere fact that the defendant has not testified in this case shall not create any presumption of guilt," violates the spirit of the law "that he shall at his own request and not otherwise be deemed a competent witness," and his neglect or refusal to testify shall not be referred to by any attorney prosecuting the case or considered

by the court." State v. Robinson, 117 Mo. 663; 29 Am. & Eng. Enc. of Law, 681.

To instruct that the prisoner can be guilty of only the higher offense, when the jury might convict of a lesser, is fatal error. Hagan v. State, 10 Oh. St. 459; 14 Cent. Dig. c. 2727; State v. Duffy, 100 N. W. 796.

MORGAN, C. J. The defendant was convicted of the crime of burglary in the third degree, and sentenced to five years in the penitentiary. His principal contention on the appeal is that the court erred in refusing to give certain requested instructions bearing on the relation of the owner of the building, and of a certain detective, to the commission of the alleged crime. His claim is that the owner of the building consented to the burglary, and that defendant was instigated to commit the burglary under the undue influence of the detective in causing him to become intoxicated.

. The facts are uncontradicted in respect to what transpired before the burglary, and are as follows: About January, 1904, several crimes, including burglaries, larcenies and arson were committed in Minto, Walsh county, N. D., without any success by the local authorities in arresting the perpetrators and bringing them to trial. Thereupon the county authorities sought the aid of one Walker, a detective from St. Paul. The detective had an interview with the state's attorney upon his arrival in the county, and secured from him the names of the persons suspected of complicity in the past crimes, among them being the name of the defendant. The detective thereupon acted as cook in a restaurant in Minto. This restaurant was kept in connection with a place kept by one Gile, where intoxicating liquors were unlawfully sold. The restaurant feature of the establishment was a pretense, as a matter of fact, and was resorted to for the purpose of giving to the detective the appearance of having employment at the place. After some days the defendant and Walker became acquainted, and soon became constant companions. They ate together, slept together, drank to excess together, and became confidential with each other and intimate in their relations. The detective loaned the defendant small sums of money at one time, and in conversation about money matters the detective told the defendant that he had $65 coming from Canada. The defendant then stated to Walker that he knew where "we could get some money," and, upon being asked where, answered, "in some of these stores around here." The defendant and

Walker finally, and after much consideration of the time and place of burglary, concluded to break into a store. The detective says in respect to the final conclusion: "We arranged a deal to break this store open." The first suggestion of a burglary, as between the defendant and Walker, came from the defendant. Several stores were suggested by the defendant as ones that might be burglarized, and among them Zulesdorff's, the one that was broken into. Before the store to be burglarized was agreed upon, Walker secured a letter of introduction to the mayor of Minto from the state's attorney. Walker presented the letter to the mayor, and told him of the contemplated burglary, and further stated: "I told him what I was there for, and told him about the stores, this building to be broken open, and told him that I didn't want myself in some place where I might get shot, * * * and told the doctor, if he knew any storekeeper in town there that would keep a secret, he had better go and notify him, and afterwards I would see him." Dr. Evans, the mayor, suggested that Zulesdorff's store be selected, and saw Zulesdorff in pursuance of this request, and Zulesdorff sent Walker word that he wished to see him. Walker saw Zulesdorff thereafter, and testifies as to what transpired between them as follows: "And he said that he had seen Dr. Evans, and he said that things would be all right; and I told him that after it was broken into he was to keep still about it, and told him what I wanted to know on the outside; and I said, 'By doing that I can get in a little work, and can find out the rest of these people;' so that was about all that was said between I and Frank Zulesdorff." Later, he testified as follows upon his further cross-examination: "Q. And Zulesdorff told you it would be all right? A. Yes, sir. Q. And that he would permit you to use his store in your plans, and would keep the matter a secret for a sufficient length of time to enable you to complete the job? A. Yes, sir." Zulesdorff did nothing further in reference to the burglary, except that he marked two $5 bills that he left in the money drawer with other money on the Saturday night preceding the burglary, which was committed on Sunday night. The doors and safe and money drawers were locked, and left in the same manner as usual. He marked the bills so that he could identify them in case they were stolen. On these facts it is claimed that Zulesdorff consented to the breaking, and that the defendant cannot, in consequence of such consent, be rightfully convicted of the crime of burglary.

After a conversation between Zulesdorff and Dr. Evans and Walker, it was definitely decided by defendant and Walker that the Zulesdorff store was the one to be burglarized. Walker says that he never made any suggestions to the defendant as to the burglary; that he simply acquiesced and agreed to defendant's plans. In answer to a question as to "why you didn't go on with your plans, then, everything being all right," he testifies: "Yes, sir, right enough if I had wanted to work the plan myself, but I didn't want to do that. I wanted him to do it himself, if he wanted to do it." Walker and defendant agreed to break into the store Saturday night, and went to the store for that purpose, but something happened after they got to the store, causing the breaking to be abandoned on defendant's request. He then said, however, "We will try it tomorrow night." On Sunday night they again went to the store, and broke into it by joint force. The defendant removed the marked bills and other money from the money drawer, and a fur-lined coat was also taken from the store by defendant, and they left the building together. After leaving the building the money, $16.60, was equally divided between them. The overcoat was hidden in a livery barn by the defendant, and subsequently found by an officer and returned to the owner. In a few days the defendant was arrested at the instance of one Gile, and his trial and conviction followed.

Upon these facts, two questions are presented for consideration which were raised at the trial by requests to instruct the jury, and they were also urged on a motion for a new trial: (1) Did the owner of the property consent to the breaking into of his building by the defendant? (2) Did the fact of the detective Walker's participation in the burglary entitle the defendant to a reversal of the judgment of conviction?

Upon the first question, the facts as narrated show that Zulesdorff did nothing by any act to aid in the burglary of his buliding. He remained passive after being informed of the intended burglary. The plan of a burglary had been arranged before he was advised of the plan of the detective to join the defendant in the proposed burglary as a feigned participant. Zulesdorff gave the detective no instructions. He did not advise him as to the manner of proceeding, nor do anything to assist in the burglary. The store was closed and locked in the usual manner. When he consented to remain away, at the request of the detective, for the

purpose of securing evidence, it was not certain that his store was the one to be burglarized, nor when it was to occur. The Zulesdorff store was selected as the one to be burglarized after the detective's interview with him. Under these conditions it cannot be said that he consented to the burglary. Before the owner's consent will be a defense to a burglary, the owner must participate, or in some way aid or solicit or encourage the burglary. Mere knowledge that a person's property is to be burglarized, followed by nonaction on his part to thwart it, is not deemed a consent to it. His consent must be manifested by some act of assistance. Mere passiveness for the purpose of securing evidence of the burglary is not such consent as can be urged by the burglar as a defense. The detective was not the agent of Zulesdorff in the matter at all, nor did he have charge of the building in any sense, hence the detective's acts cannot be said to be those of the owner. In People v. Hanselman, 76 Cal. 460, 18 Pac. 425, 9 Am. St. Rep. 238, the court said: "And under the authorities we do not think that there is such consent where there is mere passive submission on the part of the owner of the goods taken, and no indication that he wishes them taken, and no knowledge by the taker that he wishes them taken, and no mutual understanding between the two, and no active measures of inducement employed for the purpose of leading into temptation, and no preconcert whatever between the thief and the owner." In State v. Sneff, 22 Neb. 481, 35 N. W. 219, the court said: "The fact that those in charge of a building hear of an intended burglary to be committed by breaking into the building do not prevent it, but put in a force in the building to capture the burglar, and he is so captured, does not affect the guilt of the burglar." In a similar case to this, in State v. Jansen, 22 Kan. 498, in speaking of the conduct of the owner of the building, the court said: "His willingness to assist in and facilitate the detection and arrest of a criminal was no consent to the commission of the crime." In McAdams v. State, 8 Lea (Tenn.) 456, the court said: "A man may direct his servant or a third person to appear to encourage the design of a thief and lead him on until the offense is complete, so long as he does not induce the original intent, but merely provides for its discovery after it has been formed." See, also, Thompson v. State, 18 Ind. 386, 81 Am. Dec. 364; Clark on Criminal Law, p. 11; Varner v. State, 72 Ga. 745; State v. Stickney, 53 Kan. 308, 36 Pac. 714, 42 Am. St. Rep. 284; State

v. Adams, 115 N. C. 775, 20 S. E. 722; 6 Cyc. p. 182, and cases cited.

Upon the second question, the state's evidence shows that the detective did not instigate the commission of the offense. The suggestion of committing the crime, and the active planning of it, is shown to have come from the defendant. The detective fell in and agreed with the defendant's plan. It is true the detective deceived the defendant as to the purpose of his complicity in the crime. He assisted by his acts, but with a hidden purpose. Without commending this practice, or commenting upon it as dangerous and generally of doubtful propriety, we will say that, if the defendant is shown to have committed the crime in its completeness, the feigned complicity of a detective in the crime should not be a shield to the defendant. The authorities almost unanimously hold that a detective may aid in the commission of the offense in conjunction with a criminal, and that the fact will not exonerate the guilty party. Mere deception by the detective will not shield the defendant, if the offense be committed by him free from the influence or instigation of the detective. The detective must not prompt or urge or lead in the commission of the offense. The defendant must act freely of his own motion, and, if he so acts, the fact that the detective was not an accomplice in fact will not accrue to his benefit. The defendant is not to be charged with what was done by the detective, as the two are not acting together for a common purpose. As was said by the court in State v. Jansen, supra: "The act of a detective may, perhaps, not be imputable to the defendant, as there is a want of a community of motive. But where each of the overt acts going to make up the crime charged is personally done by the defendant, and with criminal intent, his guilt is complete, no matter what motives may prompt or what acts be done by the party who is with and apparently assisting him." The cases cited above are all to the effect that the assistance of a detective in a burglary is no defense to a person who himself does every act essential to constitute the burglary.

The defendant did not testify at the trial, hence the facts as to what transpired between him and Walker at and before the burglary are all to be gathered from Walker's testimony. From this testimony, carefully scrutinized, there is no support, even by inference from the facts stated, for the contention that Walker instigated the crime, hence the proposed requests on the question of the insti-

gation of the crime by him were properly refused as not applicable to the case under any theory or hypothesis to be drawn therefrom. The court gave the jury correct instructions on the question of consent. They were told that mere knowledge by the owner that the building was to be burglarized, without taking steps to prevent the same, would not be a consent to the commission of the offense. They were also instructed that, if the building was burglarized by the "procurement and consent" of the owner, the defendant would not be guilty. The jury were properly instructed on the effect of the intoxication of the defendant. Under such instructions the jury should have acquitted the defendant if the facts warranted a finding of intoxication as defined in the instructions. The evidence, in our judgment, would not warrant a finding that he was intoxicated at all when the crime was committed.

Complaint is made on the ruling of the court in admitting admissions in the nature of a confession made by the defendant in the presence of the state's attorney and others soon after the offense was committed. The ground of complaint is that such confession was made under the inducement of a promise made by the detective. The detective told the defendant while in jail after his arrest that "in order to help himself out" he had better tell who the parties were that were implicated in the crimes that had previously been committed in Minto. There was nothing said by him at this time as to the commission of the offense for which he was tried, and what was there said by defendant was not admitted in evidence. In the conversation or presence of the state's attorney, the defendant admitted having assisted in burglarizing the Zulesdorff store. At this time defendant knew that Walker was a detective. But there was no promise made, and there is no ground for any claim that the admission was not voluntarily made, and without any suggestion even of any benefit to be gained by him by such admission. The admission was admissible. People v. Willet, 27 Hun, 469.

The court read to the jury the section of the Code relating to persons on trial for offenses not becoming witnesses for themselves, and the effect thereof, and that the jury should not consider that fact in making up their verdict. We have recently held that giving such instruction is not error. State v. Wisnewski, 13 N. D. 649, 102 N. W. 883.

Exceptions were saved to the introduction and to the exclusion of certain evidence. We have carefully considered these exceptions, and find them without merit. One of these exceptions relates to excluded evidence of the defendant's condition as to sobriety when he was arrested two days after the burglary. Another relates to the ownership of the livery barn where the overcoat was hidden, and that the owner was defendant's father. Other assignments of error in refusing requests have been carefully considered, and found not prejudicial error, but properly refused. The evidence amply sustains the verdict, and the trial was without prejudicial error.

The judgment is affirmed. All concur.