THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JASPER MASON SMITH, Plaintiff in Error.

*Opinion filed June 20, 1911—Rehearing denied October 11, 1911.*

1. CRIMINAL LAW—*what does not amount to encouragement or solicitation to commit a crime.* The rule that an owner cannot aid, encourage or solicit the commission of a crime against his own property is not violated where an employer, suspecting that his postage stamps are being taken and sold by an employee, marks a quantity of stamps in accordance with the plan of certain post-office inspectors, who had arrested an alleged confederate of the employee and had him arrange a meeting with the employee to obtain more stamps.

2. SAME—*when questions concerning admission of confession need not be considered.* If the undisputed evidence in the record, outside of the defendant's confession, is so complete as to leave no reasonable doubt as to his guilt, it is unnecessary for a court of review to determine whether the confession was made under such circumstances as to render it incompetent or whether the general objection thereto was sufficient to preserve that question for review.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

S. E. Foos, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and W. EDGAR SAMPSON, (ROBERT E. CROWE, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

The plaintiff in error was indicted in the criminal court of Cook county for the embezzlement and larceny of $50 worth of United States postage stamps, the property of Libby, McNeill & Libby, a corporation. He pleaded not guilty to the indictment, was tried, convicted and sentenced to confinement in the penitentiary, and brings the record here for review by writ of error.

Plaintiff in error had charge of the mailing department of Libby, McNeill & Libby. Elston and Driggs, two post-office inspectors, learned in March, 1910, that one Robert Griffith had been disposing of considerable quantities of postage stamps to a man named Owens, who had an office in the New York Life building. On the 31st of March Elston and Driggs arrested Griffith and found on his person United States postage stamps worth $317. They took him to Inspector Steward, in the government building, and upon being questioned Griffith told the inspectors he obtained the stamps from the plaintiff in error, who was employed at the stock yards by Libby, McNeill & Libby. The inspectors then called up the president of that corporation

by telephone, and on being informed of the situation he
sent three representatives to the government building.   On
their arrival at the building it was arranged that Griffith
should call plaintiff in error by telephone and inform him he
had the money for the last stamps received and also inform
him that Owens wanted some more stamps.   By means of
extension 'phones the representatives of Libby, McNeill &
Libby listened to the conversation between Griffith and the
plaintiff in error, the substance of which was that Griffith
told plaintiff in error he had the money and asked when
and where he could meet plaintiff in error, who replied he
would meet Griffith the next evening at 5:30, at Halsted
and Forty-first streets.   Griffith inquired if plaintiff in er-
ror could get some more stamps, and he said he could get
about $200 worth.   The representatives of Libby, McNeill
& Libby then went to the offices of that corporation and
marked a number of sheets of stamps so that they would be
able to identify them.   It was arranged between the post-
office inspectors and Griffith that the inspectors would be
near the meeting place appointed by Griffith and plaintiff in
error so they could see them when they met.   If plaintiff in
error had any stamps Griffith was to walk along the street
with him, and if he did not have stamps Griffith was to
take off his hat.   When Griffith and the plaintiff in error
met, the inspectors placed the plaintiff in error under arrest
and found upon his person United States postage stamps,—
ones, twos, fours and fives,—to the amount of $130.   These
stamps were produced at the trial, and among them were
sheets of different denominations containing marks which
witnesses in the employ of Libby, McNeill & Libby testified
they placed on the stamps the evening before.   By means of
these marks they positively identified them as the property
of Libby, McNeill & Libby.   The cashier of that corpora-
tion testified that upon the day plaintiff in error was ar-
rested he issued to him 2000 one-cent stamps, 5500 two-cent
stamps and 200 four-cent stamps.   After placing plaintiff in

error under arrest the post-office inspectors took him to the office of Libby, McNeill & Libby and into the presence of H. W. Hardy, the assistant treasurer of Libby, McNeill & Libby, who was also present in the government building the evening before, when Griffith talked with plaintiff in error over the telephone. Hardy testified plaintiff in error said he wished to see him personally; that he would like to get the matter out of the hands of the post-office inspectors, and inquired if anything could be done to hush it up, and said he would give $5000 to do it. Hardy replied that he did not know what could be done, and asked plaintiff in error if $5000 would cover the amount of stamps he had taken. Plaintiff in error said he could not then tell how many he had taken. Hardy told him if he had not taken that amount he would not want to ask him to pay that much, but if that amount did not cover the stamps taken he would not consider a settlement on that basis. Hardy further told plaintiff in error he could not do anything without talking with Mr. Aaron, the attorney for Libby, McNeill & Libby; that he would talk to Mr. Aaron about the matter and see plaintiff in error the next morning. The witness saw plaintiff in error the next morning at the police station, and plaintiff in error said he wished whatever was to be done would be done quickly. Witness told him he did not see what could be done unless he knew how many stamps had been taken. Plaintiff in error said he would like to see his wife about giving security; that he had been taking stamps for a period of about five years and the amount taken was about $9000; that he had a small amount of farm property and an interest in the business of Lundstrom & Smith, but his home was in his wife's name and he wanted to see her about giving security. He also said his income from the business of Lundstrom & Smith would soon wipe out the amount taken if that would be accepted as security. Witness replied that he would see what could be done.

The errors assigned are, that plaintiff in error was invited, encouraged and solicited to commit the crime; that the court erred in admitting the confession of plaintiff in error to Hardy; that the evidence was insufficient to sustain the conviction, and that the court erred in giving and refusing instructions.

There is no basis for the contention that plaintiff in error was encouraged or solicited to take the stamps by Libby, McNeill & Libby or anyone in its employ. The criminal design and intent originated in the mind of plaintiff in error. Neither the owner of the stamps nor its agents urged or advised the commission of the crime, but, suspecting the plaintiff in error, it took precautions to ascertain whether he would commit the offense. The law does not prohibit this being done. If it did, it would destroy one of the most effective agencies for the detection of crime. *Love* v. *People,* 160 Ill. 501, only announced the rule that an owner cannot aid, encourage or solicit the commission of crime against his own property.

Only a general objection was interposed to the confession of plaintiff in error testified to by the witness Hardy, but whether said confession was made under circumstances which rendered it incompetent as testimony, and whether, if incompetent, the objection made preserved the question for review, is not necessary to a decision of this case, for, independent of the confession, the undisputed evidence against plaintiff in error was so complete as to leave no reasonable doubt whatever as to his guilt.

There was no error committed by the court in giving and refusing instructions.

The judgment is affirmed.     *Judgment affirmed.*