STATE OF NORTH CAROLINA v. BERNICE LEE BURNETTE.

(Filed 4 May, 1955.)

**1. Criminal Law § 6a—**

Where the criminal intent and design originates in the mind of a person other than defendant, and defendant is incited and induced to commit the crime in order that he might be prosecuted for it, such entrapment is a valid defense.

**2. Same—**

Where a defendant commits all the essential elements of an offense pursuant to an intent and design originating in his own mind, and the act is an offense regardless of consent, the fact that an officer or another waits passively and affords defendant an opportunity to commit the criminal act, or facilitates its commission, in order to secure evidence against defendant, does not amount to an entrapment constituting a defense.

**3. Same—**

Even in those offenses in which want of consent is an essential element, a person who knows that a crime is contemplated against his person or property, may wait passively and permit matters to go on, or create conditions under which the crime against himself may be committed, for the purpose of apprehending the criminal, without having assented to the act, and the defense of entrapment is not available to the person committing the crime when the intent and design to commit the act originates in his own mind.

**4. Rape § 24—**

In order to convict defendant of an assault with intent to commit rape, the State must prove not only an assault, but that defendant committed the assault with intent to gratify his passion on the person of his victim at all events, notwithstanding any resistance on her part.

**5. Rape § 25: Criminal Law § 6a—In this prosecution for assault with intent to commit rape, evidence held not to show consent for purpose of entrapment.**

The evidence favorable to the State tended to show that defendant called prosecutrix by telephone several times at night, and by obscene language and threats expressed his intent to satisfy his passion on her person at all events, even if he had to go to her home and get her or kill her, that defendant demanded that she meet him, that prosecutrix was afraid to stay at home that night unless the anonymous telephone caller was apprehended, that she was a woman of good character, and reluctantly consented upon request of officers of the law to go and meet defendant with an officer concealed in the back of the car, that she made several attempts to meet him in accordance with directions given in repeated telephone calls, that on the last occasion she stopped at the place designated and defendant drove up and begged to get into the car, that she directed him to go to the other side of the car and unlocked the door, and that defendant opened the door, and "lunged across the seat" at her, grabbing her cloak, and raising up to put his hands around her throat, when she screamed. *Held:* The evidence does not show assent to the assault by prosecutrix, but only that prosecu-

STATE *v.* BURNETTE.

trix and the officers created the conditions under which defendant might commit the crime for the purpose of apprehending him, and nonsuit was correctly denied, since the evidence discloses an assault committed by defendant with intent to commit rape notwithstanding any resistance on the part of the prosecutrix, pursuant to a plan or design originating in defendant's own mind.

**6. Criminal Law § 53o—**

In order for defendant to be entitled to have the defense of entrapment submitted to the jury, there must be credible evidence tending to support defendant's contention that he was a victim of entrapment as that term is known to the law.

**7. Same—**

An instruction to the effect that if a person does not induce, encourage, aid or solicit the commission of a crime against himself or his property, he may wait for the purpose of obtaining evidence for a prosecution, *is held* without error.

**8. Same—**

An instruction on the defense of entrapment to the effect that if prosecutrix aided, encouraged or consented to an assault upon her by defendant for the purpose of apprehending defendant in the commission of the assault, pursuant to an intent not originating with defendant, defendant would not be guilty, *is held* without error.

**9. Same—**

An instruction to the effect that if prosecutrix arranged for an assault to be committed against her person by the defendant for the purpose of helping law enforcement officers in the apprehension of defendant in the commission of the assault, and consented thereto for the purpose of entrapment, defendant would not be guilty, but that if prosecutrix merely created conditions under which defendant could commit the offense and the intent and design to commit the offense originated with defendant, defendant would be guilty, notwithstanding that the prosecutrix waited in order that the law enforcement officers might apprehend defendant in the commission of the act, *is held* not prejudicial to defendant.

**10. Criminal Law § 81c (2)—**

Where, construing the charge as a whole, it is apparent that considering the part of the charge immediately before and immediately after the portion excepted to, the jury could not have been misled thereby, error in such portion is not sufficiently prejudicial to warrant a new trial.

**11. Criminal Law § 53k—**

A statement of a valid contention supported by competent evidence cannot be held for error.

**12. Criminal Law § 53o—**

An instruction on the defense of entrapment that there is a difference between inducing a person to commit an unlawful act and setting a trap to catch him in the act of committing a criminal offense of his own conception, and that if the criminal intent originates in the mind of the defendant

and the offense is completed because of an opportunity furnished in order to secure evidence against defendant, such circumstances are not a defense, *is held* not prejudicial.

BARNHILL, C. J., took no part in the consideration or decision of this case.

HIGGINS, J., dissents.

BOBBITT, J., concurring.

APPEAL by defendant from *Martin, Special Judge,* December Criminal Term 1954 of WAKE.

Criminal prosecution on indictment charging the defendant with an assault with intent to commit rape.

This is a synopsis of what the evidence for the State tends to show: Mrs. Frances Buffaloe and her husband, Joe Buffaloe, who have been married 10 years, live in the Town of Garner. Mrs. Buffaloe is a lady of excellent character, and is an active worker in her church and club.

At 8:00 p.m. on 29 November 1954 the telephone bell in her home rang. She answered it, and a person whose conversation was vulgar, which she did not repeat, demanded that he wanted her, and was going to have her. She told him to go to the devil, and if she knew who and where he was, he would be shot for saying such things to a lady, and hung up the receiver.

As a result of this telephone call Joe Buffaloe telephoned W. P. Pearce, a member of the Wake County Sheriff's Department, who went immediately to the Buffaloe Home. About ten minutes after Pearce's arrival, which was then about 8:30 p.m., the telephone bell rang again.

Frances Buffaloe answered and held the receiver so that Pearce could listen in to every word said. Frances Buffaloe testified that it was the voice that called her thirty minutes earlier. This voice said over the telephone: "He wanted her to meet him at the Toot & Tell Drive-In in 15 minutes, that he had seen her on Saturday afternoon prior to that and had watched her walk from her husband's store to the house on the previous Saturday and that since that time that he had wanted her and intended having her before day, even if he had to come to her home and get her or kill her or shoot all the lights out of the house. He further stated that he would be at this point in 15 minutes and for her to come alone and that he knew that she could drive a car. He also said that he knew the kind of car which she had and for her to be sure to come alone, and that he would be there."

After this statement over the telephone ended, Pearce told Frances Buffaloe that if she would take her automobile, and go to Toot & Tell Drive-In, they could see if the person who had called would be there. She did not want to go, but finally consented. At that time Joe and Frances Buffaloe and Pearce were the only persons present.

Whereupon Frances Buffaloe, with Pearce lying in the back seat of her car, drove to the Toot & Tell Drive-In, which is about a quarter of a mile from her home, and stopped. Shortly after their arrival an automobile came down old No. 70 Highway in front of Toot & Tell Drive-In, and turned to the right down No. 50 Highway a few feet. It turned, and came slowly up to the front of the parked Buffaloe automobile throwing its lights into it, and then slowly backed out, and left. About ten minutes later Frances Buffaloe drove back to her home.

After their return State Patrolmen D. R. Emory, Kirby and Philpott arrived. This plan was made to meet the telephone caller if the person called again. An officer would get in the back of Frances Buffaloe's car, and she would drive to the place suggested by the caller, and the other officers would be concealed nearby. Frances Buffaloe said she was scared for her life, she had been threatened, she was scared to go to bed, she was scared to go to meet the caller, she didn't want to do it, but she would do it, because with those officers present or nearby she felt she would be protected, that she couldn't stay home if the caller wasn't caught that night. She did not go along with the plan wholeheartedly, but she was afraid not to. She consented to go. In a short time the telephone rang again. Frances Buffaloe answered, and again Pearce heard every word the caller said. The person began talking, and Frances Buffaloe asked who he was. He refused to give his name, but said he knew her, had seen her around the store, and going from the store to her home. He said: "I saw you just a few minutes ago in your car up at the Toot & Tell It, but it was too light and too public a place for me to stop. I did come down there in my car, and turned around at your car and left. But this time I want you to get in your car, and drive up to the railroad crossing which is up west of the Garner city limits a quarter of a mile or so, about a quarter of a mile. I'm going to come this time, and you be sure and come on there." Pursuant to the advice of the officers Frances Buffaloe consented to go.

Pearce got into the back of the automobile, and Frances Buffaloe drove to the suggested railroad crossing, and parked. In about ten minutes an automobile slowly passed by going East. This automobile turned and came slowly back pulling off on the shoulder of the road where the Buffaloe automobile was: it was barely moving, and then it was pulled back into the road and left. This automobile turned, and came back by the Buffaloe automobile barely moving and barely missing hitting it. When the automobile passed by Pearce raised up, and got the first three digits on the license plate: it was a 1941 two-door black Chevrolet automobile. The defendant owns such a car. The car left. The Buffaloe car returned home.

STATE *v.* BURNETTE.

Before midnight the telephone rang again. Frances Buffaloe answered, and Patrolman Emory listened in. The caller asked Frances Buffaloe to meet him in 15 minutes at the railroad crossing, saying he would definitely meet her this time: this was repeated several times. Frances Buffaloe consented to meet him. The back seat was taken out of her car, and Emory concealed himself in the back.

Frances Buffaloe drove to the crossing and parked. Her lights were on full; the doors of the car were locked. In about ten minutes the defendant Bernice Lee Burnette came up to the car, and knocked on the glass. She lowered the glass of the door enough to hear him speak. He said: "Lady, are you in trouble?" She replied: "No, I am not in trouble." He said: "I want to get in the car with you." She told him she had had a telephone call to meet a man there, and asked if he was the man, saying "if you are not the man, you better be going because this man told me that he would be here in 15 minutes and you're going to be in danger if you're found here." He did not leave, but kept pulling at the window, begging to get in. She recognized the defendant's voice as the voice of the person who had been calling her over the telephone. She told him, if he wanted to get in the car, to go to the other side. He did. Emory had told her to let him in the car. She unlocked the door. The defendant opened it, and "lunged across the seat" at her, grabbing her cloak, and raising up to put his hands around her throat. She screamed, Emory raised up and shouted, and the defendant fled.

Emory chased the defendant about a quarter of a mile, and gave out before catching him. In the chase the defendant's cap fell off. The other officers concealed nearby caught the defendant, and carried him to the Town Hall of Garner. The defendant admitted that it was his cap, and that he was the man who came up to the Buffaloe car. He said he didn't know what made him go to the car, and do what he did. He admitted passing the locations where the Buffaloe car was parked, when Pearce was in it. He said, if he made the telephone calls, he was drunk. The defendant had the odor of intoxicating liquor on his breath when caught, but he was not under its influence.

Frances Buffaloe at the Town Hall that night asked the defendant why he chose her. He neither looked at her nor replied. From hearing him talk there, she identified his voice as the voice of the person who had made the calls to her earlier that night.

The defendant offered no evidence.

Plea: Not Guilty. Verdict: Guilty as charged in the indictment.

Judgment of imprisonment was pronounced upon the verdict.

The defendant appeals, assigning error.

*Harry McMullan, Attorney General, and Ralph Moody, Assistant Attorney General, for the State.*
*Taylor & Mitchell for Defendant, Appellant.*

PARKER, J. We have here for determination (1) the sufficiency of the evidence to carry the case to the jury, and (2) the adequacy and correctness of the charge.

The defendant assigns as error the failure of the court to sustain his motion for judgment of nonsuit made at the close of the State's case, the defendant offered no evidence, on the charge of assault with intent to commit rape; and also assigns as error a similar ruling of the Court on the charge of assault on a female. His argument in support of these motions is based on two grounds: one, no assault was committed, and two, consent of Frances Buffaloe.

The defendant contends that the State's evidence shows that he is the victim of an entrapment, and that the case should have been nonsuited. Before discussing this contention, we advert to certain relevant principles of law.

It is the general rule that where the criminal intent and design originates in the mind of one other than the defendant, and the defendant is, by persuasion, trickery or fraud, incited and induced to commit the crime charged in order to prosecute him for it, when he would not have committed the crime, except for such incitements and inducements, these circumstances constitute entrapment and a valid defense. *S. v. Marquardt,* 139 Conn. 1, 89 A. 2d 219, 31 A.L.R. 2d 1206 and Anno. p. 1212; *Butts v. U. S.,* 273 Fed. 35, 18 A.L.R. 143 and Anno. p. 149; *Robinson v. U. S.,* 32 Fed. 2d 505, 66 A.L.R. 468 and Anno. p. 482; *Sorrells v. U. S.,* 287 U.S. 435, 77 L. Ed. 413, 86 A.L.R. 249 and Anno. 265; *People v. Finkelstin,* 98 Cal. App. 2d 545, 553, 220 P. 2d 934; *Falden v. Commonwealth,* 167 Va. 549, 555, 189 S.E. 329; *S. v. Jarvis,* 105 W. Va. 499, 500, 143 S.E. 235; 22 C.J.S., Criminal Law, pp. 99-100; 15 Am. Jur., Criminal Law, Sec. 336. See also *S. v. Love; S. v. West,* 229 N.C. 99, 47 S.E. 2d 712; *S. v. Godwin,* 227 N.C. 449, 42 S.E. 2d 617.

In the leading case of *Butts v. U. S., supra,* Sanborn, C. J., said for the Court: "The first duties of the officers of the law are to prevent, not to punish, crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it."

A clear distinction is to be drawn between inducing a person to commit a crime he did not contemplate doing, and the setting of a trap to catch him in the execution of a crime of his own conception. *S. v. Jarvis, supra; S. v. Mantis,* 32 Idaho 724, 187 P. 268; 15 Am. Jur., Criminal Law, p. 24; 22 C.J.S., Crim. Law, pp. 100-101.

It seems to be the general rule in those cases where the doing of a particular act is a crime regardless of the consent of anyone, that entrapment is not available as a defense to a person, who has the intent and design to commit a crime originating in his own mind, and who does in fact commit all the essential elements constituting it, merely because an officer of the law, or another, in his effort to secure evidence against him for a prosecution, affords him an opportunity to commit the criminal act, or purposely places facilities in his way or aids and encourages him in the perpetration of the crime which had its genesis in his own mind. *S. v. Hughes,* 208 N.C. 542, 181 S.E. 737; *S. v. Adams,* 115 N.C. 775, 20 S.E. 722; *Sorrells v. U. S., supra; Grimm v. U. S.,* 156 U.S. 604, 39 L. Ed. 550; *S. v. Marquadt, supra, Butts v. U. S., supra; Robinson v. U. S., supra; Falden v. Commonwealth, supra;* Annotations 18 A.L.R. 149, 66 A.L.R. 482, 86 A.L.R. 265; 15 Am. Jur., Criminal Law, pp. 24-25; 22 C.J.S., Criminal Law, pp. 100-101.

This Court said in *S. v. Ice Co.,* 166 N.C. 366, 81 S.E. 737: "A very similar case is *S. v. Smith,* 152 N.C. 798, for selling whiskey contrary to the statute, in which case a police officer, suspecting the defendant, employed one to buy whiskey from the defendant and furnished the money. The defendant, like all victims caught in a trap, viciously assailed the trap. He said he ought not to be punished, because the prosecutor had 'connived' at his offense. This Court said: 'It is not the motive of the buyer, but the conduct of the seller, which is to be considered,' and held that the defendant was properly convicted."

In *People v. Conrad,* 102 App. Div. 566, 92 N. Y. Supp. 606, affirmed in 182 N.Y. 529, 74 N.E. 1122, in a Memorandum Decision, the defendant was convicted of an attempt to commit the crime of an abortion. The Appellate Division of the Supreme Court said: "The conviction of the defendant was brought about by means of a trap arranged by the officers of the County Medical Society. It is claimed that, as the defendant was lured into the commission of the claimed overt acts, he cannot be punished therefor. This contention has recently been the subject of examination by this court and by the Court of Appeals, and decided adversely to the contention of the defendant. He was not a passive instrument in the hands of the entrapping parties. He did the act with which he was charged voluntarily, with full knowledge of the subject, and of the consequences which would flow therefrom. Under such circumstances, setting a trap by which he was caught is not a defense."

In certain crimes consent to the criminal act by the person injured eliminates an essential element of the offense, and is, therefore, a good defense. Where a person arranges for a crime to be committed against

himself or his property and aids, encourages or solicits the commission thereof, such facts are a good defense to the accused. However, if a person knows a crime is contemplated against his person or property, he may wait passively and permit matters to go on, or create the conditions under which the crime against himself may be committed, for the purpose of apprehending the criminal without being held to have assented to the act. *S. v. Adams, supra; S. v. Hughes, supra; S. v. Nelson,* 232 N.C. 602, 61 S.E. 2d 626; *S. v. Abley,* 109 Iowa 61, 80 N.W. 225, 46 L.R.A. 862, 77 Am. St. Rep. 520; *People v. Hartford L. Ins. Co.,* 252 Ill. 398, 96 N.E. 1049, 37 L.R.A. (N.S.) 778; *S. v. Currie,* 13 N.D. 655, 102 N.W. 875, 69 L.R.A. 405, 112 Am. St. Rep. 687; Annotations 18 A.L.R. 149 *et seq.,* 66 A.L.R. 482 *et seq.,* 86 A.L.R. 265 *et seq.;* 15 Am. Jur., Criminal Law, Sec. 334; 22 C.J.S., Criminal Law, Sec. 42.

In *People v. Hartford L. Ins. Co., supra,* the Illinois Supreme Court said: "One cannot arrange for a crime to be committed against himself or his property, and aid, encourage, or solicit the commission of the crime *(Love v. People,* 160 Ill. 501, 32 L.R.A. 139, 43 N.E. 710), but if he does not induce or advise the commission of the crime, and merely creates the condition under which an offense against the public may be committed, the rule does not apply *(People v. Smith,* 251 Ill. 185, 95 N.E. 1041)."

In *S. v. Hughes, supra,* the defendants were charged with feloniously breaking into a store to commit larceny. The State's evidence showed that the two defendants broke into and robbed the store. Defendants offered evidence which tended to show that one defendant went to an employee of the store and suggested that the employee give him the safe combination and, if so, the loot would be divided with him; the employee reported the conversation to his superior officer, who instructed him to give the defendant a purported combination to the safe; thereafter the employee gave the defendant a combination and advised him how to break into the store and when the safe would contain a large sum of money; and that the officers seized them in the execution of their offense. The defendants contended that the owner had consented to the offense, and therefore they were not guilty. The lower court excluded this evidence of the defendants, and this Court held it properly did so, saying "if it had been admitted, we do not think it would be a defense for the defendants."

*S. v. Goffney,* 157 N.C. 624, 73 S.E. 162, is a case where consent to the crime was a defense. In that case the evidence was that the owner of the building entered, *directed his servant Farmer to induce the defendant to break in his store;* that the servant obeyed his orders, and the

servant and the defendant entered the store together; and that the owner was present watching them and arrested defendant after he entered.

In *S. v. Decker,* 326 Mo. 946, 33 S.W. 2d 958, the defendant was convicted of bank robbery. The Supreme Court of Missouri held this instruction on the issue of entrapment properly declared the law on the case: "It informs the jury that, where the criminal intent to commit a crime originates in the mind of the defendant on trial and the offense is accomplished, it constitutes no defense that an opportunity is furnished or that an officer aided the accused in the commission of the crime in order to obtain evidence upon which to prosecute him. It then informs the jury that, if they find from the evidence that the criminal intent, if any, to rob the bank originated in the mind of defendant, and the robbery was accomplished, it is no defense to said robbery that an opportunity was furnished or that an officer aided."

This is the sixth headnote in *S. v. Snider,* 111 Mont. 310, 111 P. 2d 1047: "Where evidence showed that criminal intent to steal sheep originated in mind of accused and that at most owner and sheepherder who placed sheep in shed from which 56 lambs were loaded at night by accused remained silent and failed to place obstacles in way of accused and afforded him facilities whereby he could carry out his own criminal design without giving consent to taking, evidence warranted conviction of grand larceny as against defense of 'entrapment.' "

The facts in *S. v. Nelson, supra,* are quite different from those in the instant case. In the *Nelson Case* there was no evidence that the prosecutrix knew that a crime was contemplated against her person by the defendant.

To convict a defendant on the charge of an assault with intent to commit rape, the State must show by evidence "not only an assault, but that the defendant intended to gratify his passion on the person of the woman, and that he intended to do so, at all events, notwithstanding any resistance on her part." *S. v. Massey,* 86 N.C. 658; approved and followed in *S. v. Hill,* 181 N.C. 558, 107 S.E. 140; *S. v. Jones,* 222 N.C. 37, 21 S.E. 2d 812; *S. v. Heater,* 229 N.C. 540, 50 S.E. 2d 309. An assault is essential to constitute the crime. *S. v. Overcash,* 226 N.C. 632, 39 S.E. 2d 810.

The evidence offered by the State, considered in the light most favorable to it on the motion for judgment of nonsuit, tends to show these facts: One, the defendant saw Frances Buffaloe the Saturday before the 29th of November, watched her walk from her husband's store to her home, *and then and there an intent and design originated in his mind to satisfy his unlawful sexual lust upon her person by force and*

*against her will.* In defendant's second telephone message to her on the night of 29 November he said, "he had seen her on Saturday afternoon prior to that and had watched her walk from her husband's store to the house on the previous Saturday *and that since that time that he had wanted her and intended having her before day, even if he had to come to her home and get her or kill her."* Two, the defendant called her by telephone four times that night demanding that she meet him. Three, Frances Buffaloe knew that the defendant contemplated against her person the crime of rape. Four, Frances Buffaloe was afraid to stay at home that night, that she was scared for her life, unless this anonymous telephone caller was apprehended. Five, she is a woman of good character, active in her church, and her consent to meet this unknown caller, and her unlocking the automobile door, were words and acts merely creating the conditions under which the crime against herself, which had its genesis in the defendant's own mind, and which she knew the defendant contemplated against her, might be committed, for the purpose of apprehending the defendant, and that she did not assent to the defendant's assault with intent to commit rape upon her body. Six, that when the defendant opened the door, and "lunged across the seat" at her, grabbing her cloak and raising up to put his hands around her throat, an assault was committed upon her, and she was in a situation of immediate present danger, and that the defendant then and there intended to gratify his unlawful sexual passion on her person by force, notwithstanding any resistance on her part, and would have done so but for the presence of the patrolman in the back of her automobile. Seven, that Frances Buffaloe and the officers set a trap to catch the defendant, and caught him *in the execution of a crime of his own conception.* Eight, that the defendant committed every essential element of the crime of an assault with intent to commit rape forcibly and against her will on the body of Frances Buffaloe. The Trial Court correctly overruled the motion for judgment of nonsuit.

The defendant has five assignments of error to the charge: all relate to what the Trial Court charged the jury as to entrapment.

Whether the defendant was entitled to have the defense of entrapment submitted to the jury is to be determined by the evidence. Before a Trial Court can submit such a defense to the jury there must be some credible evidence tending to support the defendant's contention that he was a victim of entrapment, as that term is known to the law. *Sorrells v. U. S., supra; S. v. Marquardt, supra;* 53 Am. Jur., Trial, Sec. 291.

The evidence in this case as to what Frances Buffaloe and the officers did is not as strong as what the employee of the store did in *S. v. Hughes, supra,* and we held that what the employee did was not a defense for the defendants. In our opinion, and we so hold, there is no

evidence in the instant case tending to show that the defendant was entrapped, and such a defense should not have been submitted to the jury by the Trial Court.

However, in spite of the fact that there was no evidence to support the defendant's contention of entrapment, the Trial Judge submitted such a defense to the jury in its charge.

The Court instructed the jury that entrapment is a plan to catch by trap or trick or artifice, or to ensnare a person. No offense is committed where a person arranges for a crime to be committed against himself or his property, and aids, encourages or solicits the commission thereof. If a person induces another to commit a crime against the moving party to catch him in the act which he would not have done otherwise, then the person so apprehended may set up entrapment as a defense, and is entitled to an acquittal. The defendant assigns as error the sentence in the charge immediately following the above part of the charge, to wit: "If the person does not induce, encourage, aid or solicit the commission of a crime against himself or his property, he may wait, for it would be criminal to perpetrate an offense or create a condition under which an offense against the public may be committed." This assignment of error is without merit. Annotations: 18 A.L.R. 146; 66 A.L.R. 478; 86 A.L.R. 263.

The defendant has two assignments of error, based upon Exceptions 16 and 23, to this part of the charge: "The Court charges you that the charges laid in the bill of indictment against the defendant and upon which he is being tried, are individual rights of a person to which want of consent is an element and to which the law just given you applies. If you find from the evidence that the prosecuting witness met the defendant at the location where she was allegedly assaulted pursuant to an appointment which she and the defendant had made in a telephone conversation; that prior to her actual meeting of the defendant that the prosecuting witness had kept two previous appointments to meet the defendant, at which time the defendant did not approach the prosecuting witness, that all of the appointments which the prosecuting witness made with the defendant were at night, that at the time of the actual meeting the prosecuting witness was seated in her car under the steering wheel with only her parking lights and dash lights on; that when the defendant arrived and did approach the prosecuting witness, that she told him that she was waiting to meet someone, that on all occasions when the prosecuting witness kept appointments to meet the defendant she appeared to be alone and so appeared at the time and place of their actual meeting; that she informed the defendant as to how he might enter her automobile by going around to another side of it; that when he had gone around to another side of her automobile, she

unlocked the automobile door through which the defendant entered her automobile, in which automobile a law enforcement officer was concealed, and even if you further find from the evidence that the prosecuting witness did these things for the purpose of helping the law enforcement officers in the apprehension of the defendant in the commission of an assault against her person, and which plan to assault did not originate with the defendant, or for the purpose of identifying the defendant as the party with whom she had made the appointment, then the Court instructs you that the prosecuting witness aided or encouraged such conduct as you find from the evidence that he exhibited toward her at their meeting, and that she arranged for an assault to be committed against her person by the defendant. If you further find beyond a reasonable doubt that she did know or had reason to believe that the defendant was going to commit an assault upon her, if you find from the evidence that the prosecuting witness aided the defendant in such conduct toward her at their meeting." Immediately following this part of the charge assigned as error, the Court charged as follows: "If you find from the evidence that the prosecuting witness aided or encouraged the defendant in such conduct toward her at their meeting as you find that conduct to have been from the evidence; if you find from the evidence that the prosecuting witness arranged for an assault to be committed against her person by the defendant; and if you further find that she so arranged for an assault to be committed against her person by the defendant and so aided or encouraged the defendant for the purpose of helping law enforcement officers in the apprehension of the defendant in the commission of an assault against her person for the purpose of identifying the defendant as the party with whom she had made the appointment, then the Court instructs you that the prosecuting witness consented to such conduct toward her as you find from the evidence that the defendant exhibited and you must find the defendant not guilty of any crime charged or included in this bill of indictment."

The defendant contends particularly that the use of the words "and which plan to assault did not originate with the defendant" is reversible error. To sustain such contention would necessitate the overruling of the overwhelming weight of authority. Annotations: 18 A.L.R. 146; 66 A.L.R. 478; 86 A.L.R. 263.

The defendant also contends that the use of the words: "If you further find beyond a reasonable doubt that she did know or had reason to believe that the defendant was going to commit an assault upon her, if you find from the evidence that the prosecuting witness aided the defendant in such conduct toward her at their meeting," put the burden of proof upon the defendant beyond a reasonable doubt. It seems to

us that in this sentence the Court started out to charge the State's position that if a person knows a crime is contemplated against his person, he may create the conditions under which the crime against himself may be committed for the purpose of apprehending the criminal without being held to have assented to the act, but did not finish the sentence. However that may be, the charge of the Court immediately before and immediately after this sentence was most favorable to the defendant because there was no evidence to support this part of the charge as to entrapment, as that term is known to the law. Reading the charge as a whole, it does not seem that this incomplete sentence could have misled the jury. Certainly it is not sufficiently prejudicial to cause a new trial.

The next assignment of error to the charge relates to a statement of the State's contentions. These contentions are amply supported by competent evidence. This assignment of error is overruled.

The last assignment of error to the charge is to this part of it: "Now, there is a difference between inducing a person to commit an unlawful act and setting a trap to catch him in the execution of the criminal offense of his own conception. No offense is committed where a person arranges for a crime to be committed against him or his property and aids and encourages and solicits the commission thereof. If the criminal intent originates in the mind of the accused and the criminal offense is completed because of the fact that an opportunity is furnished or that the accused is aided in the commission of the crime in order to secure evidence against him constitutes no defense on the part of the defendant." This assignment of error is without merit. *S. v. Jarvis, supra; S. v. Mantis, supra;* 15 Am. Jur., Criminal Law, p. 24; 22 C.J.S., Criminal Law, pp. 100-101; Annotations: 18 A.L.R. 146; 66 A.L.R., 478; 86 A.L.R. 263.

There are no assignments of error to the evidence. The other assignment of error is formal.

The defendant has been found guilty as charged in the bill of indictment by a jury under a charge highly favorable to himself. Reversible error is not made to appear. The defendant must abide by the judgment of the Trial Court.

No error.

BARNHILL, C. J., took no part in the consideration or decision of this case.

HIGGINS, J., dissents.

BOBBITT, J., concurring: The evidence, considered in the light most favorable to the State, is sufficient to support the finding by the jury

that defendant, a male person over eighteen years of age, unlawfully assaulted the prosecutrix.

In the court below, defendant's counsel submitted elaborate prayers for instructions bearing upon the subject of entrapment. I agree that error, if any, in the instructions given was in defendant's favor.

Furthermore, I agree that the defense of entrapment, as understood and defined in the criminal law, was not available to the defendant under the evidence. Everything prosecutrix did was done under threat or peremptory demand of defendant.

The evidence is clear that the primary purpose, if not the sole purpose, of the alleged entrapment was to identify the man who had called prosecutrix over the telephone. The plan was to contact this man and to draw him into conversation whereby he would expressly or by implication identify himself as the person who had telephoned.

The court below rightly analyzed the case. The evidence as to the appointments and meetings, and as to what occurred immediately preceding the assault, was relevant on the question of defendant's intent at the time of the assault, i.e., whether he then intended to have sexual intercourse with the prosecutrix at all events, notwithstanding any resistance she might make. On this phase of the case, after correct instructions as to the elements of the crime, the court instructed the jury as follows: "As I have already stated to you, if you are not satisfied from the evidence and beyond a reasonable doubt that the defendant assaulted Mrs. Buffaloe with the then present intent to commit rape upon her, it is your duty to return a verdict of not guilty as to that."

Included in the court's review of defendant's contentions are the following: The defendant "contends that, if you find from the evidence and beyond a reasonable doubt that he was there and did open the door of the car and get in the automobile, the circumstances, the testimony in this case, could not lead you to the conclusion that he intended to rape her; says and contends that human experience, your common sense and experience is contrary to that, because he says the most the State's evidence could possibly satisfy you beyond a reasonable doubt was that he went there by appointment, and the State so contends he went there by appointment; that on two occasions, at least one at the drive-in and one at the railroad crossing before that time, the very person that the State says was to be there, and the State contends that it was he, the defendant; that the State's own evidence tends to show that he had reason to believe that he was being met by a woman agreeing to his proposition; that she had gone twice to meet him and, having done so the third time, and having unlocked the door and invited him into the automobile, that it is contrary to human experience, contrary to common sense that he would have then, after all the arrangements were

made and after the appointment was made and plans made and he was invited into the automobile, that it would have then been foolish for him to attempt to rape her there; that with all arrangements made he would have proceeded at his leisure to accomplish his purposes; therefore, he says and contends the State's own evidence negatives the idea of any attempt to rape her or to assault her with intent to commit rape when he had a right to assume, if the State's evidence is true, that he could accomplish his purpose of sexual intercourse with the woman meeting him at his leisure and in his own time, and that therefore there was no reason, and that you ought not to be satisfied beyond a reasonable doubt that he intended to rape her there; contends that he could have accomplished his purpose at any time, and the defendant says and contends you ought not to consider that charge seriously against him and that in any event you ought to acquit him of the charge of intent to commit rape." These contentions were rejected by the jury.

In my opinion the court, by the instructions quoted above and similar instructions, gave to defendant the full benefit of the circumstances bearing upon what he calls entrapment as related to the only issue on which such evidence was germane.